# United States Court of Appeals
## For the First Circuit

_____

No. 99-2152

RALPH WILLIAMS,

Plaintiff, Appellant,

v.

RAYTHEON COMPANY,

Defendant, Appellee.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

_____

Before

Torruella, Chief Judge,

Campbell, Senior Circuit Judge,

and Schwarzer,* Senior District Judge.

_____

Ira H. Zaleznik, with whom Lawson & Weitzen, LLP was on brief, for appellant.
James F. Kavanaugh, Jr., with whom Stephen S. Churchill and Conn Kavanaugh Rosenthal Peisch & Ford, LLP were on brief, for appellee.

_____

_____

* Of the Northern District of California, sitting by designation.

July 21, 2000
_____

**SCHWARZER, <u>Senior District Judge</u>**.  Ralph Williams charged Raytheon Company with (1) gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-2, (2) age discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA) 81 Stat. 602, as amended, 29 U.S.C. § 621-634, (3) age and gender discrimination prohibited by Massachusetts G.L. c. 151B, and (4) violation of Massachusetts' public policy prohibiting retaliation for cooperating with a government investigation.  Williams initially filed a charge of discrimination with the Massachusetts Commission Against Discrimination (MCAD) and then brought this action in district court.  The district court granted summary judgment against Williams on all claims and this appeal followed.  We have jurisdiction under 28 U.S.C. § 1291 and affirm, albeit for reasons different from the district court's.

## FACTUAL BACKGROUND

Williams is a 51-year old white male who was employed by Raytheon as Director, Internal Communications.  He had responsibility for writing, producing and editing Raytheon's corporate newspaper and other corporate publications.  In 1993, Elizabeth Allen joined Raytheon as its Vice-President, Corporate Communications.  In that position, Allen was Williams' direct supervisor and she continued in that position until Williams' termination in 1995.  Allen was Raytheon's first female officer and set out to make her presence felt in the

company. She told members of her department that she thought Raytheon was run by "old, white men," that she intended to change the corporate culture, and that she would favor the hiring of women and younger people.

From the outset, her style was assertive and abrasive. She forced a female employee out of the company by assigning her computer tasks she knew the employee could not perform. By mistake, she approved premature publication of a story about the award of a government contract to Raytheon which led to a government investigation. At the request of the legal department, Williams prepared an explanatory statement for the government investigator but Allen told him to write a new statement based on one she had written. In her statement, Allen blamed Williams' secretary for the erroneous release of the story. When Williams testified about this incident before an investigator, Allen, according to Williams, became furious and threatened him, implying that failure to follow her commands would cost him his job.

According to Williams, Allen conducted a campaign of harassment against him to prevent him from performing his job. The final episode began on June 8, 1995, when Allen asked him to do three things regarding the Raytheon newspaper: develop an alternative publication that cut production time in half, develop five or six backup stories, and provide a schedule for the next issue. On June 19,

-4-

Williams responded with a four-page memorandum, the tone of which Allen considered hostile and sarcastic. About June 23, Williams met with Allen in her office. Allen claims Williams threatened her. According to Williams, she told him she wanted him to leave the company. Williams, who admits that he was upset, emotional, and may have raised his voice, said he would report her to the Raytheon Human Resources Department (HR). Williams then filed a complaint against Allen with HR.

On July 11, 1995, Williams was called into the Executive Offices and was met by Allen and two members of HR. Allen told him that she was permanently suspending him for insubordination. When Williams asked when he had been insubordinate, he was told he had been "insubordinate by memo." Williams never returned to Raytheon. He was eventually replaced by a forty-eight year old white man.

### DISCUSSION

## I. THE TITLE VII CLAIM

The question before us is whether this story of two years of discord, as related in Williams' brief in this court, translates into a viable claim of gender discrimination. We agree with the district court that Williams has sustained the "not onerous" burden of establishing a prima facie case. Texas Dep't Of Community Affairs v. Burdine, 450 U.S. 248, 253-54 (1981). A reasonable juror could find that he was within a protected class (in the sense that every person is in a class protected against gender discrimination), performed his job

-5-

satisfactorily (which is not an issue), suffered adverse employment action, and was replaced by a person "with roughly equivalent qualifications" (also undisputed). See Smith v. Stratus Co., 40 F.3d 11, 15 (1st Cir. 1994).

Raytheon has come forward with what it contends is a legitimate, nondiscriminatory reason for Williams' termination--insubordination. Williams contends that Raytheon's reason is a pretext for gender discrimination. In reviewing the summary judgment we must review all of the evidence in the record before us, drawing all reasonable inferences in favor of the nonmoving party. See Reeves v. Sanderson Plumbing Prods., Inc., ___ U.S. ___, 120 S. Ct. 2097, 2110 (June 12, 2000).

"Proof that the defendant's explanation is unworthy of credence is . . . one form of circumstantial evidence that is probative of intentional discrimination." Id. at 2108. In Reeves, the employer contended that plaintiff had been fired for "shoddy record keeping." In response, plaintiff came forward with what the Court described as "a substantial showing that respondent's explanation was false." Id. at 2107. He offered specific evidence that he had properly maintained attendance records and that he was not responsible for failure to discipline late and absent employees. Id. at 2107. The Court held that the evidence sufficed to find that the employer's asserted

justification was false, permitting the jury to conclude that the employer had unlawfully discriminated.  Id. at 2109.

Williams' case is a far cry from Reeves'.  Williams made no showing, much less a substantial showing, that the insubordination justification was false.  It is not disputed that Williams and Allen had an acrimonious working relationship.  The denouement came when she directed him to come up with a plan to conform the publication of the newspaper to her ideas and he responded in a lengthy memorandum, essentially parrying her directions and shifting responsibility for shortcomings to her.  At a meeting that followed, the two had words.  Williams was emotional and upset.  Allen said she wanted him to leave the company and he said he would report her to HR, which he did by filing a complaint against her.  Shortly thereafter, he was terminated for insubordination.

The issue is not whether reasonable jurors could find that Raytheon lacked good cause to terminate Williams--Williams was an at-will employee and Title VII, in any event, does not prohibit wrongful discharge--but, rather, whether Williams made a substantial showing that the reason given for the termination was false.  It is undisputed that Williams was told he was fired for insubordination, a word whose meaning is not limited to disobedience of orders but includes also "a generally disaffected attitude toward authority."  Webster's Third New International Dictionary (1971) 1172.  There is no evidence

-7-

contradicting Raytheon's stated reason of insubordination for Williams' discharge.

In the absence of evidence from which a reasonable juror could find Raytheon's explanation false, we must determine whether other evidence would permit a reasonable juror to find that Williams sustained his ultimate burden of proving Raytheon intentionally discriminated against him on account of his gender. See Burdine, 450 U.S. at 253. That Allen may have harbored hostility and treated him unfairly standing alone is not probative of gender based animus. What is the evidence on which Williams relies? Williams asserts that Allen said she needed to change Raytheon's "old, white men" culture so that women and younger people could assume a prominent position, that she said she would favor women and younger people in her hiring, that she ordered Williams to give credit for a brochure he created to a female assistant, and that when Williams accused her of wanting him out because he was an older man, she remained silent. Yet, the evidence also shows that Allen hired men, in one case hiring a younger man to replace an older woman. Given the probative value of Raytheon's stated reason for the discharge, these stray remarks (or non-remarks) do not support a reasonable inference that Raytheon acted out of a discriminatory purpose.

## II.  THE ADEA CLAIM

-8-

The district court rejected Williams' ADEA claim because his replacement (48 years old) was insignificantly younger than Williams (51 years old) and this age difference was insufficient to support a prima facie presumption of age discrimination. In O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996), the Supreme Court explained that a "prima facie case requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion. In the age-discrimination context, such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger." Id. at 312-13 (internal quotations, alterations, and citation omitted).[1] The circuits that have interpreted O'Connor are in accord that an age difference of less than five years is insufficient to support a prima facie case of age discrimination. See, e.g., Hoffman v. Primedia Special Interest Publications, 2000 WL 793989 at *2 (7th Cir. June 21, 2000) (plaintiff failed to establish prima facie case of age discrimination where replacement was only three years younger); Bush v. Citaphone Corp., 161 F.3d 363, 368 (6th Cir. 1998) (five year age difference is not "substantially younger"); Schlitz v. Burlington N. R.R., 115 F.3d 1407,

---

[1] O'Connor reversed a summary judgment for defendant, the lower court having held that replacement of a worker in the protected class by another worker also in the protected class did not preclude the existence of a prima facie case. The Supreme Court went on to analyze the inferences that may properly be drawn from employment decisions, including the replacement of a worker with one not significantly younger.

-9-

1413 (8th Cir. 1997) (same).  We agree with those decisions and conclude that a three year age difference is too insignificant to support a prima facie case of age discrimination.

## III.  STATE LAW CLAIMS

### A.  Age and Gender Discrimination

To maintain an action for discrimination under state law, Williams would have had to file a charge with MCAD within six months of the alleged discriminatory act.  See G.L. c. 151B, § 5; see also Andrews v. Arkwright Mut. Ins. Co., 423 Mass. 1021, 1021-1022, 673 N.E.2d 40 (1996).  The statute of limitations began to run when Williams found out that Raytheon had decided to terminate him.  See Ching v. Mitre Corp., 921 F.2d 11, 14 (1st Cir. 1990).  He testified on deposition that he was permanently terminated on July 11, 1995, but he did not file his charge of discrimination with MCAD until February 2, 1996.  In his affidavit in opposition to the summary judgment motion, Williams sought to correct his deposition testimony, asserting that not until he had a telephone conversation with a Raytheon official in August was it explained to him that his indefinite suspension would result in a termination.  When, as here, "an interested witness had given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory but does not give an explanation why the testimony is

-10-

changed."  Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 5 (1st Cir. 1994).

To avoid the plain bar of the statute of limitations, Williams seeks refuge in the continuing violation doctrine.  See 804 C.M.R. § 1.03(2) (extending the six-month statute of limitations where "the unlawful conduct complained of is of a continuing nature").  The doctrine is plainly inapposite to Williams' complaint of discriminatory termination.  It applies to two different types of violations, neither of which is present here: systemic violations based on a discriminatory policy or practice and serial violations composed of a series of discriminatory acts.  See Pilgrim v. Trustees of Tufts College, 118 F.3d 864, 868-69 (1st Cir. 1997).  Moreover, the doctrine does not apply because Williams considered the act of which he complains discriminatory at the time, as shown by his preliminary complaint to MCAD on July 12, 1995, the day after his termination.  See Provencher v. CVS Pharmacy, 145 F.3d 5, 14 (1st Cir. 1998).

**B. Retaliation**

Williams also claims that he was discharged for giving truthful testimony to a government investigator. To succeed on a claim for retaliatory discharge, Williams "must establish the basic fact that he was subjected to an adverse employment action <u>because</u> of his protected activity." <u>Lewis</u> v. <u>Gillette Co.</u>, 22 F.3d 22, 24 (1st Cir. 1994). "[T]here must be competent evidence that . . . a retaliatory motive played a part in the adverse employment actions alleged." <u>Id.</u>

The government investigation arose out of the premature publication in the Raytheon newspaper of a story of a government contract award to a Raytheon subsidiary. The facts viewed in the light most favorable to Williams are these. In August 1994, Williams was told by the legal department to prepare a statement for the investigators. He did but Allen told him to throw it out and prepare one using her affidavit as a model, which he did. After submission of the statement he had been directed to prepare, Williams was interviewed by an investigator. Williams, who assumed (but did not know) that Allen knew what he had said to the investigator, thought that Allen was furious with him, although nothing in the record explains why she should have been furious. The record does not disclose what Williams told the investigator, much less why his interview in the course of the investigation with which the company had cooperated should have generated a retaliatory animus. Williams' interview appears to have

-12-

ended the investigation. In October, Allen made a comment that Williams was not interested in loyalty, only in the truth. In February 1995, Allen gave Williams a bonus, commenting that she was pleased with his performance since August. On June 23, 1995, Williams and Allen had the emotional meeting previously described; at this meeting Williams says he told Allen that she was harassing him because of the investigation but she remained silent. On July 11, he was indefinitely suspended for insubordination.

We find no competent evidence of a causal link between Williams' testimony to the investigator and his discharge. See Lewis, 22 F.3d at 25. As discussed above, Williams made no showing to refute Raytheon's position that Williams was discharged for insubordination. Nothing in what Allen said or did during the eleven-month interval between the testimony and the discharge suggests that she harbored any retaliatory animus; to the contrary, in February she gave Williams a bonus and expressed her satisfaction and the final row between them has not been shown to be connected to the earlier episode. See Mesnick v. General Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991). Finally, while it is not known what Williams' testimony was, the record lacks any indication that it gave Allen grounds for wanting to terminate Williams.

## CONCLUSION

For the reasons stated, the judgment is affirmed.

-13-

AFFIRMED.