Rafael NATER (pro-se), Plaintiff,

v.

Richard RILEY, Secretary of U.S. Department of Education, Defendant.

No. Civ. 99–1366(JP).

United States District Court, D. Puerto Rico.

Sept. 14, 2000.

Ignacio Rivera Cordero, Rivera & Montalvo, San Juan, PR, for plaintiff.

Fidel A. Sevillano–Del–Río, Assistant United States Attorney, U.S. Attorney's Office, District of P.R., Hato Rey, PR, for defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION

The Court has before it Plaintiff Rafael Náter's Motion for Summary Judgment (docket No. 60); Defendant Richard Riley, Secretary of the U.S. Department of Education's Motion to Dismiss Complaint and for Summary Judgment (docket No. 61); Plaintiff Rafael Náter's Opposition to Defendant's motion (docket No. 63); Defendant's Reply (docket No. 67); and Plaintiff's Sur–Reply (docket No. 68). Also before the Court is Defendant's Motion to Dismiss Plaintiff's Puerto Rico Claims (docket No. 15) and Plaintiff's Opposition thereto (docket No. 20).

Plaintiff formerly worked as an Auditor with the United States Department of Education, Office of the Inspector General. In the Complaint, Plaintiff, a Puerto Rican, alleges that he suffered adverse employment actions due to whistle-blowing activities; due to discrimination based on national origin, race, political ideas, and refusal to cease requesting orders, directives and comments in writing; and in retaliation for filing an administrative discrimination complaint. The employment actions upon which Plaintiff bases his claims are three performance evaluations (1994, 1996 and 1997), his non-selection for a promotion in June 1995, a five-day suspension effective October 28, 1996, and his removal from the federal service on February 27, 1998. Defendant moves for dismissal of the Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and further seeks summary judgment pursuant to Federal Rule of Civil Procedure 56(c).

## II. LEGAL STANDARD

The Court sets forth the relevant legal standard for each ground for dismissal raised by Defendant. First, Defendant moves to dismiss Plaintiff's discrimination claims concerning his 1994, 1996 and 1997 performance evaluations, five-day suspension, and removal from federal service for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). In assessing a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the Court "reads the allegations of the complaint liberally, treating all well-pleaded facts as true and taking all inferences in favor of the plaintiff." *Negrón–Gaztambide v. Hernández–Torres*, 35 F.3d 25, 27 (1st Cir.1994); *see also Aversa v. United States*, 99 F.3d 1200, 1209–10 (1st Cir. 1996). Further, the Court is "mindful that the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Taber Partners, I v. Merit*

*Builders, Inc.,* 987 F.2d 57, 60 (1st Cir. 1993).

Second, Defendant moves to dismiss Plaintiff's claims of discrimination based on national origin, race, and political ideas pursuant to Rule 12(b)(6). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. It is well-settled, however, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Miranda v. Ponce Fed. Bank,* 948 F.2d 41 (1st Cir.1991). The Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996) (citations omitted).

Although there is a low threshold for stating a claim, the pleading requirement is "not entirely a toothless tiger." *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (1st Cir.1996) (quoting *The Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989)). Thus, a Complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988). The Court, however, need not accept a complaint's " 'bald assertions' or legal conclusions" when assessing a motion to dismiss. *Abbott v. United States,* 144 F.3d 1, 2 (1st Cir.1998) (citing *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1216 (1st Cir. 1996)). The plaintiff "has an affirmative responsibility "to put [his] best foot forward in an effort to present a legal theory that will support [his] claim." *McCoy,* 950 F.2d at 23.

Finally, Defendant moves for summary judgment on the grounds that no genuine issue of material fact exists for trial. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *See id.* at 248, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202; *Mack v. Great Atl. & Pac. Tea Co., Inc.,* 871 F.2d 179, 181 (1st Cir.1989). A material issue is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989).

The party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue for trial. *See Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993). To survive a motion for summary judgment, "a plaintiff must establish at least a genuine issue of material fact on every element essential to his case in chief." *Vega,* 3 F.3d at 479 (quoting *Mesnick v. General Electric Co.,* 950 F.2d 816, 823 (1st Cir.1991)). In the context of Title VII, at the prima facie stage and with respect to plaintiff's ultimate burden of proving intentional discrimination, a plaintiff must adduce "some minimally sufficient evidence to support a jury finding that he has met his burden." *Id.* Ultimately, the non-movant must provide specific facts supporting his claim that the real reason behind the employer's decision was discrimination or driven by "discriminatory animus." *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994); *Medina–Muñoz v.*

*R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 9 (1st Cir.1990).

## III. UNCONTESTED FACTS

The following facts are uncontested:

A. Plaintiff was employed as an Auditor (GS–511–12) by the U.S. Department of Education, Office of the Inspector General ("the Agency") until his removal from federal service effective February 27, 1998.

B. When Plaintiff started working in the Puerto Rico office of the Agency, there was one GS–13 position which was occupied by Porfirio Ríos Rojas ("Ríos").

C. On October 14, 1994, Plaintiff filed a formal complaint of discrimination with the Agency's Equal Employment Opportunity Office. By letter dated February 28, 1995, the Agency's EEO Group sent a letter to Plaintiff seeking clarification of the formal complaint. Plaintiff responded by letter dated March 18, 1995. The EEO Group's next communication was by letter dated April 6, 1998.

D. On September 27, 1999, the EEO Group wrote to Plaintiff, indicating that it was dismissing his complaint of discrimination because it received notice that Plaintiff had filed a Complaint in this Court on April 6, 1999 containing the allegations made in the complaint before the EEO Group.[1]

E. During the time period at issue for Plaintiff's 1994 performance evaluation, Ríos was assigned first line supervisory responsibilities for all audits performed by the staff of the Puerto Rico office, and Thomas Whiting ("Whiting") was assigned second line supervisory responsibilities for the Puerto Rico office.

Whiting was physically located in the New York office.

F. Eugene Tournour ("Tournour"), Regional Inspector General for Audit, was the rating official for Plaintiff's 1994 performance evaluation.

G. Ríos did not provide a rating for Plaintiff's performance during the 1994 performance evaluation. Plaintiff met or exceeded each of the performance objectives included in the 1994 performance evaluation and was rated as "fully successful."

H. On June 9, 1994, Ríos issued a memorandum to plaintiff concerning his refusal to follow supervisory instructions.

I. On September 16, 1994, Ríos issued a memorandum to Thomas Whiting, Acting Assistant Regional Inspector General, concerning an act of insubordination by Plaintiff based upon his refusal to prepare an audit program.

J. On January 20, 1995, Ríos issued a memorandum to Plaintiff concerning insubordination based upon Plaintiff's refusal to prepare a survey and audit program.

K. On February 10, 1995, Tournour issued Plaintiff a letter of reprimand for insubordination.

L. In June 1995, a second GS–13 position was created at the Puerto Rico office of the Agency.

M. Plaintiff applied for a GS–511–13 Auditor position in June 1995. He was not selected for the position; Tournour selected Celia Ruiz for the position.

N. Anyone who had worked at a GS–12 position for a year could have applied to any GS–13 position in any Agency office.

---

1. The letter further states that the EEO Group was unable to investigate the complaint because it had "sought clarification of [Plaintiff's] complaint on several occasions but was unable to secure the necessary information needed to proceed with the complaint." (Plf's Exh. 8.)

O. On January 22, 1996, Ríos issued a memorandum to Plaintiff admonishing him for allegedly having displayed a disrespectful attitude towards Plaintiff's supervisor, Celia Ruiz.

P. On April 20, 1996, Plaintiff filed an appeal with the MSPB alleging that he received a "fully successful" summary rating and was not selected for promotion to the GS–511–13 Auditor position in June 1995 in reprisal for whistle-blowing (N.Y.–1221–96–0334–W–1). A hearing was held on November 14, 1996 before the MSPB.

Q. By letter dated October 10, 1996, the Agency suspended Plaintiff for five days, effective October 26, 1996.

R. Plaintiff received a summary rating of "fail" for the 1996–97 evaluation period.

S. On November 17, 1997, Guido Piacesi proposed that Plaintiff be removed from federal service based on insubordination and inappropriate and unprofessional behavior. On February 25, 1998, Hugh Monaghan issued a decision removing Plaintiff from the federal service.

T. On December 18, 1997, the MSPB issued its Initial Decision in NY–1221–96–0334–W–1, denying Plaintiff's request for corrective action. The MSPB found that Plaintiff abandoned the issue of non-selection for the GS–13 Auditor position in June 1995 at the hearing. The MSPB further found that plaintiff did not make any protected disclosures, and thus failed to establish jurisdiction.

U. The issue of discrimination based upon race, national origin and/or reprisal was not adjudicated during the hearing in NY–1221–96–0334–W–1.

V. In the December 18, 1997 Initial Decision, Plaintiff was informed that he could file a petition for review of the decision with the Court of Appeals for the Federal Circuit once the decision became final. Plaintiff was also informed that he could request Board review of the initial decision by filing a petition for review with the MSPB.

W. On November 3, 1998, the MSPB denied Plaintiff's petition for review of the December 18, 1997 Initial Decision.

X. On November 23, 1998, Plaintiff filed a petition with the Equal Employment Opportunity Commission, Office of Federal Operations, for review of the MSPB's final decision in NY–1221–96–0334–W–1. The EEOC issued a denial of consideration on February 22, 1999, holding that "[b]ecause the MSPB did not address any [ ] matters within the Commission's jurisdiction, the Commission has no jurisdiction to review petitioner's case."

Y. Plaintiff filed an appeal (N.Y.–1221–98–0401–W–1) alleging that his 1997 performance evaluation was in reprisal for whistle-blowing activities. In a December 31, 1998 Initial Decision, the MSPB dismissed plaintiff's appeal for lack of jurisdiction.

Z. In its December 31, 1998 Initial Decision, the MSPB informed plaintiff that he could file a petition for review of the decision with the Court of Appeals for the Federal Circuit once the decision became final. Plaintiff was also informed that he could request Board review of the initial decision by filing a petition for review with the MSPB.

AA. Plaintiff filed an appeal with the MSPB concerning his 1995–96 and 1996–97 performance appraisals; his five-day suspension; and his removal from federal service. The MSPB docketed the removal action (N.Y.–1221–98–0272–I–1) separate-

ly from the remaining personnel actions (N.Y.–1221–98–0272–W–1).

BB. In the appeal docketed NY–1221–98–0272–W–1, Plaintiff alleged that his 1995–96 and 1996–97 performance appraisals and the five-day suspension were based on whistle-blowing activities. Plaintiff also alleged that he was discriminated against by the Agency because of his race, national origin, and political ideas.

CC. On March 2, 1999, the MSPB issued an Initial Decision in NY–1221–98–0272–W–1, dismissing the appeal for lack of jurisdiction.

DD. The MSPB informed plaintiff in its March 2, 1999 Initial Decision that he could file a petition for review of the decision with the Court of Appeals for the Federal Circuit once the decision became final. Plaintiff was also informed that he could request Board review of the initial decision by filing a petition for review with the MSPB.

EE. The MSPB did not adjudicate the issue of discrimination in the appeals docketed NY–1221–96–0334–W–1 (1994 performance evaluation & non-selection for promotion); NY–1221–98–0401–W–1 (1997 performance evaluation); or NY–1221–98–0272–W–1 (1996 and 1997 performance evaluations and five-day suspension).

FF. Plaintiff filed an MSPB appeal of his removal from the federal service. The appeal was docketed as NY–0752–98–0297–I–1.

GG. On March 18, 1999, the MSPB issued an Initial Decision in NY–0752–98–0297–I–1, finding that it possessed jurisdiction but affirming the Agency's removal action on the grounds that the Agency proved three charges of insubordination and one charge of inappropriate and unprofessional behavior, and

that the Agency would have removed the appellant absent his disclosures. The MSPB also found that Plaintiff failed to present a prima facie case of national origin discrimination.

HH. In its March 18, 1999 Initial Decision, the MSPB informed Plaintiff that he could file a petition for review of the decision with the MSPB, with the Equal Employment Opportunity Commission, with the United States District Court if plaintiff was contesting the MSPB's decision on discrimination issues, or with the United States Court of Appeals for the Federal Circuit if plaintiff chose not to contest the Board's discrimination decision.

II. Plaintiff is a member of a protected group (Puerto Rican).

JJ. All of the auditors in the Puerto Rico Office of the Inspector General were members of Plaintiff's protected group (Puerto Rican).

KK. Plaintiff filed petitions for review before the U.S. Court of Appeals for the Federal Circuit of MSPB decisions concerning the following personnel actions: 1994, 1996 and 1997 performance evaluations and the five-day suspension.

LL. In a per curiam opinion dated May 9, 2000, the Federal Circuit affirmed the MSPB's decisions concerning the 1994, 1996 and 1996 performance evaluations and the five-day suspension.

## IV. DISCUSSION

### A. SUBJECT MATTER JURISDICTION

 In 1978, Congress passed the Civil Service Reform Act, Pub.L. No. 95–454, 1, 92 Stat. 1111 (1978) (codified as amended in various sections of 5, 10, 15, 28, 31, 39 & 42 U.S.C. (1994)). Among other things, the Civil Service Reform Act

created the Merit Systems Protection Board ("MSPB"), a independent quasi-judicial federal agency with jurisdiction to review civil service decisions. *See.* 5 U.S.C. §§ 1201–06; *see also McAdams v. Reno,* 64 F.3d 1137, 1141 (8th Cir.1995). The MSPB has jurisdiction to review adverse employment actions which fall into one of five categories: removal, suspension for more than 14 days, reduction in grade, reduction in pay, or a furlough of 30 days or less. *See* 5 U.S.C. § 7512; *see also Sloan v. West,* 140 F.3d 1255, 1259 (9th Cir.1998). It also has pendent jurisdiction over discrimination claims brought in connection with an adverse employment action by a federal agency. *See* 29 C.F.R. § 1614.302 (2000); *see also Sloan,* 140 F.3d at 1259.

■ Federal employees asserting Title VII claims must exhaust administrative remedies as a precondition to filing a civil action in a federal district court. *See Brown v. General Servs. Admin.,* 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976). Where a federal employee claims to have been affected by both an adverse employment action and a related Title VII violation, a so-called "mixed case," the employee may elect either to file a complaint with the relevant federal agency's Equal Employment Opportunity ("EEO") department or to assert both claims before the MSPB in order to satisfy the exhaustion of administrative remedies requirement. *See McAdams,* 64 F.3d at 1141; *see also* 5 U.S.C. § 7702; 29 C.F.R. § 1614.403. If the employee chooses to proceed by filing a mixed case complaint before the agency's EEO, and wishes to preserve both claims, the employee must appeal the EEO decision to the MSPB,[2] not to the EEOC; otherwise, the employee will be deemed to have waived the non-discrimination claim. *See Sloan,* 140 F.3d

at 1260. Alternatively, the employee may proceed directly to the MSPB without first resorting to the agency's EEO department. *See McAdams,* 64 F.3d at 1141.

■ When a case is appealed to the MSPB, the MSPB makes a threshold determination of jurisdiction. A finding by the MSPB that it lacks jurisdiction to hear a claim is appealable only to the United States Court of Appeals for the Federal Circuit. *See Sloan,* 140 F.3d at 1262; *Synan v. Merit Systems Protection Bd.,* 765 F.2d 1099, 1101–02 (Fed.Cir.1985); *Ballentine v. Merit Systems Protection Bd.,* 738 F.2d 1244, 1247 (Fed.Cir.1984); *see also* 5 U.S.C. § 7703(b)(1); 28 U.S.C. § 1295; 5 C.F.R. § 1201.120. On the other hand, if the MSPB determines that it has jurisdiction, and decides the merits of both the non-discrimination claim and the discrimination claim, the case becomes a "mixed case appeal."[3] *See Sloan,* 140 F.3d at 1261; *see also* 5 U.S.C. § 7703(b)(2); 5 C.F.R. § 1201.175.

■ A final decision by the MSPB in a mixed case appeal may then be appealed to a United States District Court. *See Sloan,* 140 F.3d at 1261; *New v. Brown,* No. 97–CV–125, 1997 WL 666173, *3 (E.D.Pa. Oct.22, 1997). When the MSPB "does not consider the employee's claim of discrimination on its merits, review of the [MSPB's] determination that it lacks jurisdiction to hear the employee's claim lies exclusively in the Federal Circuit." *Wall v. United States,* 871 F.2d 1540, 1543 (10th Cir.1989), *cert. denied,* 493 U.S. 1019, 110 S.Ct. 717, 107 L.Ed.2d 737 (1990); *New,* 1997 WL 666173 at *3; *see also* 5 U.S.C. § 7703(b). Upon appeal, the plaintiff would have to convince the Federal Circuit that it is a mixed case. If the plaintiff succeeded in that endeavor, the District

---

**2.** If 120 days have passed without a judicially reviewable action by the EEO department of the agency, the employee may appeal the matter to the MSPB even in the absence of an agency decision. *See McAdams,* 64 F.3d at 1141–42; 5 U.S.C. § 7702(e)(2).

**3.** 29 C.F.R. § 1614.302 ("A mixed case appeal is an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap or age.").

Court still would not have jurisdiction over the case. Rather, the Federal Circuit would remand the case to the MSPB, and the MSPB would have to rule on the discrimination claim. *See Wall*, 871 F.2d at 1543; *New*, 1997 WL 666173 at *3. Only after the MSPB reaches a decision on the merits of plaintiff's discrimination claim would the District Court have jurisdiction. *See Ballentine*, 738 F.2d at 1246 ("[U]ntil the discrimination issue and the appealable action have been decided on the merits by the MSPB, an appellant is granted no rights to a trial de novo in a civil action under [5 U.S.C.] § 7702 or § 7703.").

The Court finds that Plaintiff's claims concerning his non-selection for promotion in June 1995; his 1994, 1996 and 1997 performance evaluations; and his five-day suspension are subject to dismissal for lack of subject matter jurisdiction. Over Plaintiff's removal claim, however, this Court possesses jurisdiction. The Court will discuss each of these claims in turn.

### 1. 1994 Performance Evaluation and Non–Selection for Promotion

■ Plaintiff brought an appeal before the MSPB concerning a performance evaluation for the period ending in 1994 and his non-selection for promotion to a GS–13 Auditor position in June 1995. This appeal was docketed as NY–1221–96–0334–W–1. Plaintiff alleged that the lower evaluation and his non-selection for promotion were in reprisal for having made protected disclosures under the Whistle Blowing Act. It is unclear whether Plaintiff alleged in that appeal that the negative evaluation and non-selection for promotion were motivated by discrimination. In its December 18, 1997 decision, the MSPB noted in a footnote that Plaintiff expressed that he was "looking for a review of the case [Plaintiff] presented as of October 14, 1994 to the Department of Education, EEO Division, where [Plaintiff] claimed discrimination," but the decision reflects that no factual allegations of discrimination were presented for review. (Dft's Exh. 18, at 2.) The

MSPB found that it did not possess jurisdiction over the claim because Plaintiff made no protected disclosures, and dismissed the appeal. (Dft's Exh. 18.) The MSPB did not consider Plaintiff's discrimination claim, if any, nor did it make a finding that Plaintiff's case was a "mixed case appeal." The MSPB further found that Plaintiff had abandoned his claim of non-promotion because no evidence of the same was presented at the hearing. (*Id.*, at 8.) Plaintiff then appealed to the Federal Circuit. On May 9, 2000, the Federal Circuit affirmed the decision of the MSPB. *See Náter v. Department of Educ.*, Nos. 99–3083, 99–3143, 99–3213, 2000 WL 565471, *3 (Fed.Cir. May 9, 2000). The Federal Circuit opinion makes no mention of any claim of discrimination raised by Plaintiff, nor of the claim of non-promotion.

■ Plaintiff alleges in his Opposition that he was never notified that his case was not a mixed case appeal, and for this reason was prevented from preserving his discrimination claim by arguing that issue to the Federal Circuit or by filing an EEO complaint. He cites 29 C.F.R. § 1614.302(b), which states that "if a person files a mixed case appeal with the MSPB instead of a mixed case complaint and the MSPB dismisses the appeal for jurisdictional reasons, the agency shall promptly notify the individual in writing of the right to contact an EEO counselor within 45 days of receipt of this notice and to file an EEO complaint, subject to § 1614.107." Although Plaintiff has presented evidence to this Court that he stated to the MSPB that he intended to file a mixed case appeal, that stated intention does not so transform his case. As discussed earlier, a case does not become a "mixed case appeal" unless and until the MSPB determines that it possesses jurisdiction. *See Sloan*, 140 F.3d at 1261. It is uncontested that the MSPB dismissed the action for lack of jurisdiction, and that the MSPB found Plaintiff to have abandoned the claim of non-promotion.

Moreover, the Court's review of the motions and the evidence before it makes clear that Plaintiff has consistently failed to present anything more than a passing reference to a claim of discrimination to the MSPB, devoid of factual allegations or evidence of the same. As the District Court for the Eastern District of New York recently observed, "a passing reference is simply insufficient to put the MSPB on notice of a[ ] discrimination claim, and the MSPB was evidently unaware of any such allegation in this case." *Parola v. Internal Revenue Service*, No. 98–CV–7179 (JG), 1999 WL 1215557, *3 (E.D.N.Y. Dec.15, 1999). Plaintiff's attempt to shift the blame to the MSPB for its lack of treatment of Plaintiff's discrimination claim, and his suggestion that he was purposefully misguided to prevent him from seeking review of the decision, Plf's Opp. at 18, is unavailing and itself misguided. And of course, to the extent that Plaintiff deliberately declined to present evidence of discrimination to the MSPB in order to try the discrimination claim before this Court, it is well-settled that such tactics have been disapproved and result in the waiver of the discrimination claim. *See Otiji v. Heyman*, 47 F.Supp.2d 6, 7–8 (D.D.C.1998) (citing *Smith v. Horner*, 846 F.2d 1521, 1524 (D.C.Cir.1988)).

In conclusion, because the MSPB never found Plaintiff's case to be a "mixed case appeal," this Court lacks jurisdiction to adjudicate Plaintiff's claim arising from the 1994 performance evaluation. *See Ballentine*, 738 F.2d at 1246. In addition, Plaintiff was found to have abandoned his non-promotion claim, and failed to raise this issue on appeal before the Federal Circuit. As such, these claims are hereby **DISMISSED.**

### 2. 1996, 1997 Performance Evaluations and Five–Day Suspension

Plaintiff brought an appeal before the MSPB concerning his 1996 and 1997 performance evaluations and for a five-day suspension effective October 28, 1996, alleging that these adverse agency actions were taken against him in reprisal for having made protected disclosures under the Whistle Blowing Act and that he had been discriminated against on account of race, national origin, or political ideas. These claims were docketed as case numbers NY–1221–98–0272–W–1 and NY–1221–98–0401–W–1. In a decision dated March 2, 1999, the MSPB found that it did not possess jurisdiction over the claims because Plaintiff made no protected disclosures and that Plaintiff did not plead facts which, if true, would establish jurisdiction. (Dft's Exh. 22.) The MSPB did not consider Plaintiff's discrimination claim on the merits nor make a finding that Plaintiff's case was a "mixed case appeal." Plaintiff appealed, and the Federal Circuit affirmed the decision of the MSPB. *See Náter*, Nos. 99–3083, 99–3143, 99–3213, 2000 WL 565471 at *4. The Federal Circuit makes reference to Plaintiff's EEO complaint only to the extent that Plaintiff argued before that Court that Plaintiff was retaliated against for filing an EEO complaint. *See id.* However, the Federal Circuit discussed that claim in the context of "protected disclosures" under the Whistle–Blowing Act, finding that the filing of an EEO complaint does not constitute a protected disclosure. Thus, in view of the uncontested fact that the MSPB never found Plaintiff's case to be a "mixed case appeal," this Court lacks jurisdiction to adjudicate these claims. *See Ballentine*, 738 F.2d at 1246. Therefore, the Court hereby **DISMISSES** the claims related to the 1996 and 1997 performance evaluations and the five-day suspension.

### 3. Removal

██ Plaintiff brought an appeal before the MSPB with respect to his removal from the position of Auditor, GS–12, effective February 27, 1998. Plaintiff alleged that he was removed in reprisal for having made protected disclosures under the Whistle Blowing Act and on account of national origin discrimination. This case

was docketed as case number NY–0752–98–0297–I–1.

In a decision dated March 18, 1999, the MSPB found that it possessed jurisdiction over the removal claim because Plaintiff made protected disclosures. (Dft's Exh. 23.) However, the MSPB concluded that Plaintiff failed to prove that his whistle-blowing activities were a contributing factor in his removal, and further determined that the agency proved by clear and convincing evidence that it would have removed Plaintiff absent the protected disclosures. (*Id.*) With respect to the claim of national origin discrimination, the MSPB found that Plaintiff produced no evidence to support this claim, and thus failed to establish a prima facie case of discrimination. (*Id.*) Because the MSPB reached the claim of national origin discrimination in relation to Plaintiff's removal, Plaintiff may properly appeal the decision to this Court. *See Ballentine,* 738 F.2d at 1246; *see also* 5 U.S.C. § 7703(b)(2).

· In his Complaint, however, Plaintiff also raises claims of discriminatory removal on the basis of race and political ideas. (Compl.¶ 17). Because the MSPB only considered the merits of Plaintiff's claim for national origin discrimination in his removal, this Court possesses jurisdiction over that claim alone. Because the MSPB did not consider the claims of discriminatory removal based on race and political ideas on the merits, these claims are hereby **DISMISSED.**[4] The Court will now proceed to assess Plaintiff's claim of national origin discrimination in his removal from the federal service.

4. In the Complaint, Plaintiff alleges that he was discriminated against based in part on his political ideas and his refusal to cease requesting orders, directives and comments in writing. Discrimination on the basis of political ideas and/or a refusal to cease requesting orders, directives and comments in writing are not cognizable under Title VII. *See Hernández-Ortiz v. Díaz Colón,* 134 F.3d 361 (1st Cir.1998) (per curiam); *Parola,* No. 98–CV–

## B. NATIONAL ORIGIN DISCRIMINATION IN REMOVAL

Because Plaintiff produces no direct evidence of national origin discrimination in his removal, the Court applies the McDonnell Douglas burden-shifting framework. *See Domínguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 429 (1st Cir.2000). In *McDonnell Douglas,* the United States Supreme Court established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory treatment cases. The goal of this burden-shifting framework is to " 'progressively . . . sharpen the inquiry into the elusive factual questions of intentional discrimination.' " *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255 n. 8, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

■ The plaintiff "carr[ies] the initial burden under the statute of establishing a prima facie case of [national origin] discrimination." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. This initial burden is not onerous. *See Burdine,* 450 U.S. at 253–54, 101 S.Ct. at 1094. In an employment termination case, the plaintiff establishes a prima facie case by showing that: (1) the plaintiff is within a protected class; (2) he was performing his job at a level that met the employer's legitimate expectations; (3) he was nevertheless dismissed; and (4) the employer sought someone of roughly equivalent qualifications to perform substantially the same work after his departure. *See Mulero–Rodríguez v. Ponte, Inc.,* 98 F.3d 670, 673 (1st Cir.1996); *Lipsett v. University of*

7179 (JG), 1999 WL 1215557, at *3. Further, Plaintiff has failed to allege any other cognizable cause of action in connection with these allegations. As such, the claim of discrimination based on political ideas is hereby **DISMISSED** on this alternative ground, and the Court further **DISMISSES** the claim of discrimination based on refusal to cease requesting orders, directives and comments in writing.

*Puerto Rico*, 864 F.2d 881, 899 (1st Cir. 1988). It is uncontested that Plaintiff is Puerto Rican, and thus within a protected class, and that he was removed from his position as Auditor with the Defendant Agency. A careful review of the Complaint reveals, however, that Plaintiff fails to allege that he was performing his job at a level that met the employer's legitimate expectations, or that Plaintiff's employer sought someone of roughly equivalent qualifications to perform substantially the same work after his departure. Because Plaintiff failed to allege the elements of a prima facie case, the Court hereby **DISMISSES** Plaintiff's claim of discriminatory removal on the basis of national origin discrimination.

██ In the alternative, the Court finds that even if Plaintiff had properly plead the elements of a prima facie case of national origin discrimination in his removal, Defendant would be entitled to summary judgment. Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a "legitimate, non-discriminatory reason" for discharging the plaintiff. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Lipsett*, 864 F.2d at 899. "[T]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Hicks*, 509 U.S. at 507, 113 S.Ct. 2742. Once the defendant has met its burden of production in this regard, the plaintiff is then given the opportunity "to demonstrate that the proffered reason was not the true reason for the employment decision, but was instead pretextual." *Lipsett*, 864 F.2d at 899 (internal quotations omitted). Plaintiff's burden of proving pretext merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination. *See Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095 (citing *McDonnell Douglas*, 411 U.S. at 804–05, 93 S.Ct.

1817). The plaintiff thus may satisfy its burden either by proving pretext or by proving that the employer was more likely motivated by discriminatory intent. *See id.*

In the summary judgment context, a plaintiff must show evidence sufficient for a factfinder to reasonably conclude that the employer's decision to terminate was driven by a discriminatory animus. *See LeBlanc*, 6 F.3d at 843. If the record is "devoid of adequate direct or circumstantial evidence of the employer's discriminatory intent," the entry of summary judgment for the employer is appropriate. *See Mulero–Rodríguez*, 98 F.3d at 673 (citing *Pages–Cahue v. Iberia Líneas Aéreas de España*, 82 F.3d 533, 537 (1st Cir.1996)).

Defendant has come forward with evidence to show that Plaintiff was dismissed for insubordination in satisfaction of its burden of production. By memorandum dated June 9, 1994, Plaintiff's supervisor, Ríos, admonished Plaintiff for failure to follow Ríos' instructions. (Dft's Exh. 6.) Ríos again issued memoranda to Plaintiff on September 16, 1994 and January 20, 1995, admonishing Plaintiff after he allegedly refused to prepare audit programs as directed by his supervisor. (Dft's Exhs. 7, 8.) Then, on February 10, 1995, Tournour, the Regional Inspector General for Audit of the Defendant Agency, issued Plaintiff an official reprimand for insubordination. (Dft's Exh. 10.) On January 22, 1996, Ríos issued a memoranda to Plaintiff admonishing him for Plaintiff's alleged disrespectful attitude towards his supervisor, Celia Ruiz. (Dft's Exh. 9.) And on October 10, 1996, Plaintiff was notified of a decision to suspend him for five days, effective October 28, 1996, for disrespectful conduct during a meeting with Bernard Tadley and Celia Ruiz on April 19, 1996, during which Plaintiff was alleged to have leapt from his chair, thrown a note-pad and pen against the wall, yelled "damn it" in Spanish, and rushed back to his work area. (Dft's Exh. 11.)

Plaintiff has come forward with no evidence to suggest Defendant's proffered reason for Plaintiff's dismissal was pretextual or to show that his employer intentionally discriminated against him. In a recently decided case, the First Circuit addressed precisely such a scenario, affirming the district court's entry of summary judgment against a plaintiff suing under Title VII. *See Williams v. Raytheon Co.*, 220 F.3d 16 (1st Cir.2000). In *Williams,* the plaintiff alleged that he had been terminated from his employment on account of gender discrimination. The employer proffered a legitimate non-discriminatory justification for the plaintiff's termination; namely, that plaintiff had been terminated for insubordination. Notwithstanding plaintiff's contention that such justification was a pretext for discrimination, the district court entered summary judgment against plaintiff. *See id.* at 18. The First Circuit affirmed, observing that the plaintiff "made no showing, much less a substantial showing, that the insubordination justification was false." *Id.* at 19. The First Circuit went on to assess the circumstantial evidence before it to determine whether it would permit a reasonable juror to find that plaintiff sustained its burden of proving intentional discrimination. In so doing, it found that the decision-maker had hired individuals of the plaintiff's gender, and that other than a few stray remarks, the evidence did not support a reasonable inference of intentional discrimination. *See id.* at 20.

Similarly, in the case at bar Plaintiff submitted no evidence of pretext. It is uncontested that Plaintiff was issued memoranda for insubordination and disrespectful conduct on several occasions, was issued a formal reprimand on one occasion, and was placed on a five-day suspension for disrespectful conduct. Further, Plaintiff has come forward with no circumstantial evidence of intentional discrimination. It is uncontested that all of the auditors at the Puerto Rico office of the Inspector General were Puerto Rican and therefore, as in *Williams,* because the same decision-makers hired Puerto Ricans as Auditors, the evidence suggests that Defendant did not act out of discriminatory purpose. *See id.* at 20. Because Plaintiff did not make a substantial showing that the proffered justification for his removal was false, and there is no evidence upon which to support a reasonable inference of intentional discrimination, the Court hereby **DISMISSES** the claim of national origin discrimination.

## C. REMOVAL BASED UPON WHISTLE–BLOWING ACTIVITIES

 Because the Court has dismissed the discrimination claim for removal, it declines to exercise jurisdiction over the non-discrimination claim for removal based upon whistle-blowing activities. *See Afifi v. Department of Interior,* 924 F.2d 61, 64 (4th Cir.1991) (district court has discretion to retain jurisdiction over non-discrimination claim after dismissal of discrimination claim). Section 1631 provides for the transfer of an action to "any other such court in which the action or appeal could have been brought at the time it was filed or noticed," if such is in the interests of justice. 28 U.S.C. § 1631. Thus, Plaintiff's MSPB appeal may be transferred to the Federal Circuit if the action could have properly been brought in the Federal Circuit at the time that it was filed here and if transfer would be in the interests of justice. *See Franchi v. Manbeck,* 947 F.2d 631, 634 (2d Cir.1991).

Under 5 U.S.C. § 7703(b)(1), a petition for judicial review must be filed in the Federal Circuit "within 60 days after the date the petitioner received notice of the final order or decision of the Board." Here, the MSPB issued its decision on March 18, 1999, and Plaintiff filed this action on April 6, 1999. Thus, this action would have been timely if it had been filed in the Federal Circuit. Further, interests of judicial economy dictate that the Federal Circuit, as a specialized forum, is best suited to review Plaintiff's non-discrimina-

tion claim for removal based upon whistle-blowing activities. *See Phillips v. Seiter,* 173 F.3d 609, 610 (7th Cir.1999) (a court can transfer a case to another forum even if not asked to do so by either party) (citing *Rodríguez–Román v. Immigration & Naturalization Service,* 98 F.3d 416, 423 n. 9 (9th Cir.1996)). The Court further believes that such transfer is fair, as it preserves Plaintiff's right to review when it otherwise may be barred by the statute of limitations, and presents no inconvenience to either party to file pre-existing documents with the Federal Circuit rather than with this Court. Therefore, pursuant to 28 U.S.C. § 1631, this Court hereby **TRANSFERS** this claim to the Federal Circuit for review.

### D. PUERTO RICO LAW CLAIMS

In the Complaint, Plaintiff states that he invokes the pendent jurisdiction of this Court under the laws of Puerto Rico. Yet, the Complaint fails to state what Puerto Rico laws, if any, he seeks to invoke as a basis for recovery. Defendant moves to dismiss Plaintiff's state law causes of action on the grounds that the Civil Service Reform Act's ("CSRA") comprehensive scheme provides the exclusive remedy for federal employee complaints of prohibited personnel practices. *See Roth v. United States,* 952 F.2d 611, 614–16 (1st Cir.1991); *Berríos v. Department of Army,* 884 F.2d 28, 31–32 (1st Cir.1989). Defendant further moves for dismissal of any state law claims because, with respect to claims of discrimination in federal employment, Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, provides the exclusive remedy. *See Brown v. General Services Admin.,* 425 U.S. 820, 834–35, 96 S.Ct. 1961, 1968–69, 48 L.Ed.2d 402 (1976).

In his Opposition, Plaintiff responds that "the laws of Puerto Rico may became [sic] applicable and therefore, should be accepted as another cause of action." (Plf's Opp. at 2.) He further argues that the Complaint alleges "abusive practices, ... tort,

entrapment, and other illegal, unethical, immoral, and even bizarre activities ..." which may be actionable under Puerto Rico law. This description leaves considerable ambiguity as to the precise nature of the claims Plaintiff intends to raise under Puerto Rico law. Notwithstanding, the Court finds that in light of the factual allegations set forth in the Complaint, Plaintiff seeks to invoke Puerto Rico law for redress of prohibited personnel practices or for discrimination. Because such causes of action are preempted by federal law, the Court hereby **DISMISSES** Plaintiff's Puerto Rico law claims. *See Roth,* 952 F.2d at 616 ("In general, a federal employee whose position comes with CSRA's reach may seek redress for the untoward effects of a prohibited personnel practice only through the panoply of remedies that CSRA itself affords."); *Brown,* 425 U.S. at 834–35, 96 S.Ct. at 1968–69.

### V. CONCLUSION

In view of the foregoing, the Court hereby **DISMISSES** the Complaint, with the exception of the claim of removal in reprisal for whistle-blowing, which is hereby **TRANSFERRED** to the United States Court of Appeals for the Federal Circuit pursuant to 28 U.S.C. § 1631. The claim for discrimination in Plaintiff's removal from the federal service is hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**