Ann SUMMERS, Plaintiff,

v.

HARVARD UNIVERSITY, Defendant.

No. CIV.A.03–10548–GAO.

United States District Court,
D. Massachusetts.

Aug. 4, 2005.

Elise A. Brassil, Sarrouf, Tarricone & Flemming, Richard J. Riley, Murphy & Riley, Boston, MA, for Harvard University, Defendant.

## ORDER

O'TOOLE, District Judge.

ORDER entered adopting Report and Recommendations [22] and granting [15] Motion for Summary Judgment. After review of the relevant papers, and having received no objections to the Report and Recommendations, the Report and Recommendations is adopted and the motion for summary judgment is granted. Judgment shall enter accordingly.

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DEIN, United States Magistrate Judge.

### I. INTRODUCTION

The plaintiff, Ann Summers ("Summers"), has brought this action against the

defendant, Harvard University ("Harvard"), alleging that Harvard failed to interview or hire her for various positions because of race and/or age discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–34. The matter is presently before the court on Harvard's Motion for Summary Judgment (Docket No. 15). The undisputed facts establish that Summers has failed to satisfy the elements of a *prima facie* case of discrimination with respect to some of the positions for which she applied, and failed to refute the legitimate, non-discriminatory reasons put forth by Harvard with respect to others. Consequently, and for the reasons detailed more fully herein, this court recommends to the District Judge to whom this case is assigned that Harvard's Motion for Summary Judgment be ALLOWED.

## II. STATEMENT OF FACTS [1]

The plaintiff was born on November 7, 1943. (Harvard Mem. at Ex. B, Interrogatory No. 1). She is a Native American. (DF ¶ 1). This matter presently involves three positions at Harvard for which the plaintiff applied [2]—a position as a "Nurse Educator/Project Coordinator" at Harvard's University Health Services ("HUHS") (the "Nurse/Educator position"), as a Coordinator of Health Promotion and Outreach at HUHS (the "Coordinator position"), and as an Assistant Director for Administration and Training at Harvard's School of Public Health ("HSPH") (the "Assistant Director position"). The relevant undisputed facts are as follows.

### The Nurse/Educator Position

In April, 2002, Harvard posted a listing for the Nurse/Educator position. (DF ¶ 2). According to the posting, the successful candidate for this position would be a registered nurse with a Masters Degree in nursing, health communication or education resources, and certification as an adult nurse practitioner or a clinical nurse specialist in mental health was preferred. (Harvard's Mem. at Ex. E; Resp. at Ex. Al). The Nurse/Educator's primary responsibilities were to include patient education, implementing and evaluating student, patient and family education programs, ensuring hospital accreditation standards, coordinating community health screenings and clinics, interpreting surveys and planning responses, and offering outreach to peer groups. (*Id.*). Summers applied for this position on April 14, 2002. (Comp. at p. 2, ¶ 12). At the time she applied, Summers was 58 years old.

Kathleen Tracy, Assistant Director of Clinical Operations and Chief of Nursing for HUHS ("Tracy"), participated in the screening of the 31 resumes submitted for the position. (Tracy Affidavit [3] at ¶¶ 1–3).

---

1. The undisputed facts are derived, *inter alia*, from the Complaint ("Comp."), Harvard's "Statement of Undisputed Facts Relied Upon" (Docket No. 17), which will be cited as "DF," and Summers' "Response to Harvard University's Points of Support for Motion of Summary Judgment" (Docket No. 20), which will be cited as "Resp." Additional affidavits and exhibits are attached to Harvard's "Memorandum in Support of Motion for Summary Judgment" (Docket No. 16) ("Harvard Mem.")

2. As originally filed, the Complaint challenged Harvard's failure to interview the plaintiff for 19 positions. By order dated July 7, 2003, however, the claims relating to all but three positions were dismissed due to the plaintiff's failure to exhaust administrative remedies with respect to the other claims. (Docket No. 8).

3. The Affidavit of Kathleen Tracy is attached to the Harvard Mem. as Exhibit G.

According to Tracy, Harvard chose not to interview Summers for the position because her resume "did not indicate that she had significant experience providing direct patient education" and instead "emphasized her experience in providing staff development and case management, and instructing student nurses." (*Id.* at ¶¶ 4–5). In July, 2002, Harvard hired 56 year old Christine Johnsen ("Johnsen") for the position. (*Id.* at ¶ 6). Johnsen had "experience providing clinical care and education to HIV patients, and educating patients and clinicians on perinatal HIV transmission prevention guidelines." (*Id.* at ¶ 7). She also had extensive public health experience in infection control and state immunization programs, as well as a Masters of Public Health and a Masters of Science in Nursing in an adult nurse practitioner program. (*Id.*).

### The Coordinator Position

In May, 2002, Harvard posted an employment listing for another position at HUHS—a Coordinator of Health Promotion and Outreach. (DF ¶ 6). The Coordinator's duties were described as including the oversight and implementation of outreach efforts to student organizations. (*Id.; see* Harvard Mem. at Ex. I). Summers applied for this Coordinator position on or about May 15, 2002. (DF ¶ 7; *but see* Comp. at p. 2 ¶ 13 (applied on July 10, 2002)). HUHS received approximately 95 applications for the position. (Tracy Aff. ¶ 11). However, according to Tracy, on or about August 5, 2002, Harvard decided to defer hiring for the position, due to a combination of Johnsen taking on some of the duties and the fact that the Center for Wellness and Health Communication was being reorganized. (*Id.* at ¶ 12). To date, the position remains open. (*Id.* at ¶ 14).

### The Assistant Director Position

In July, 2002, HSPH advertised an employment opening for a one-year position (with the potential to be renewed based on funding) of Assistant Director for Administration and Training for the Division of Public Health Practice (DF ¶ 9; Harvard Mem. at Ex. J; Resp. at Ex. C1). The job description included managing and overseeing the organization and administration of the Public Health Preparedness Center, developing curriculum, preparing educational materials and trainings, working with faculty and as a liaison with other organizations, writing and managing grants, and representing and promoting the Center while supervising its staff. (*Id.*). HSPH sought candidates with a Masters Degree in Public Health or Public Administration, experience in higher level academic administration and grant management and writing, among other things. (*Id.*). Summers applied for this position in August, 2002. (Comp. at p. 2 ¶¶ 14–15).

Harvard has submitted the Affidavit of Deborah Prothrow–Stith[4] ("Prothrow–Stith"), who was employed by HSPH as the Director of the Public Health Preparedness Center until December of 2003. (Prothrow–Stith Aff. at ¶ 1). Prothrow–Stith and Deputy Director of the Division of Public Health Practice, Lenny Marcus, screened the 29 resumes submitted for consideration for the position. (*Id.* at ¶¶ 2, 6). They eliminated Summers from the candidate pool "because she did not have the relevant experience in public health or experience in academic administration." (*Id.* at ¶ 7). In November, 2002, HSPH hired Gilbert Nick ("Nick") for the position. (*Id.* at ¶ 8). Nick, an internal candidate who had been working as the Program Coordinator for the Harvard AIDS institute, is African–American and he was

---

**4.** The Affidavit is attached to the Harvard Mem. as Exhibit K.

30 years old at the time he was hired. (*Id.*). According to Prothrow–Stith, HSPH "has a policy of giving priority to internal candidates in an effort to support the career development of current Harvard employees." (*Id.* at ¶ 5). In addition, the reviewers concluded that Nick's "qualifications and experience were highly relevant to the job requirements for the Assistant Director position" and "believed that Mr. Nick was well qualified for the position of Assistant Director." (*Id.* at ¶ 10). Nick's experience included "developing, coordinating and managing professional training efforts related to an international AIDS training program," as well as writing grant submissions, managing and directing curriculum development, representing Harvard at national and international AIDS conferences and supervising staff. (*Id.* at ¶ 9). In addition to having a BA from Oberlin College, Nick had also "[c]ompleted coursework relevant to international public health, epidemiology and infectious diseases" at HSPH. (Harvard Mem. at Ex. L (Nick resume)).

### Summers' Complaints

Summers alleges that Harvard did not interview or hire her for any of the three positions discussed above because the University was discriminating against her due to her age (58 at the time she applied) and race (Native American). She also alleges that Harvard hired Johnsen, who was 56 at the time of her hiring, and Nick, an African–American, in an attempt to cover up that discrimination. (Harvard Mem. Ex. B at Interrogatories No. 9–10). She bases this conclusion on her contention that these individuals were not particularly well suited for the positions as posted. (*See* Resp. at ¶¶ 2, 10). As Summers alleges:

> I would like to remind the court that one of the justifications for hiring both of the candidates involved was each candidates

[sic] strong knowledge of HIV/AIDS while this qualification [sic] was not advertised or required for either position. This leads me to think that two people within the time frame involved, were hired specifically to address the problems of HIV/AIDS. I'm not convinced that they were hired for the advertised positions. They conveniently fit into the necessary categories of age and race (other than Caucasian) to present the case.

(*Id.* at Conclusion).

In October, 2002, Summers filed her claims of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Comp. at p. 3, ¶ 1). The EEOC found no evidence of discrimination. (*Id.* at ¶ 2). Summers' subsequent appeal was rejected by the EEOC as well. (*Id.* at ¶ 3). She filed a timely *pro se* suit with the court.

Additional facts will be addressed below where appropriate.

### III. DISCUSSION

#### A. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "A 'genuine issue' is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Calero–Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). "Once the moving party has asserted that no genuine issue of material fact exists, the burden is on the opposing party to point to specific facts demonstrating

that there is, indeed, a trialworthy issue." *Id.*

"Neither conclusory allegations nor improbable inferences are sufficient to defeat summary judgment. Rather, to withstand a properly supported motion for summary judgment, the opposing party must present enough competent evidence to enable a fact finder to decide in its favor on the disputed claims. Evidence that is merely colorable or is not significantly probative cannot deter summary judgment." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236–7 (1st Cir.2002) (internal punctuation and citations omitted). "Even in employment discrimination cases where elusive concepts such as motive or intent are at issue, summary judgment is appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir.2003) (internal quotations omitted).

Applying this standard of review to the instant case compels the conclusion that the defendant's Motion for Summary Judgment should be allowed.

### B. *Age Discrimination Claims*

Summers alleges in her complaint that she was not interviewed or hired by Harvard due to her age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–34. The ADEA makes it illegal for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Summers admittedly lacks any direct evidence that Harvard engaged in age discrimination in deciding not to interview or hire her. (*See* Summers' De-

position at pp. 124, 125, 129, 130, 144).[5] Consequently, the *McDonnell Douglas* burden-shifting framework must be applied in this case. *Suarez v. Pueblo Intern., Inc.*, 229 F.3d 49, 53 (1st Cir.2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973).

Under the *McDonnell Douglas* model, the plaintiff bears the initial burden of proving the *prima facie* case of age discrimination. *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 823 (1st Cir.1991). If she is unable to do so, summary judgment should be granted for the defendant. If the plaintiff is successful in establishing the *prima facie* case, the burden then shifts to the defendant to provide legitimate, non-discriminatory reasons for the actions. *Id.* This is a burden of production, not of persuasion. *Id.* If the defendant meets this burden, the plaintiff is required to show "that the employer's proffered reason is actually a pretext for discrimination of the type alleged." *Id.*

To prove her *prima facie* case of age discrimination, Summers must demonstrate (i) that she is a member of a protected class; "(ii) that [she] applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite [her] qualifications, [she] was rejected; and (iv) that, after [her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Moreover, a *"prima facie* case requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996) (inter-

5. A copy of Summers' Deposition is attached to the Harvard Mem. as Ex. D.

nal quotation and punctuation omitted). For the reasons detailed herein, Summers cannot meet her burden with respect to her age discrimination claims for any of the positions.

### 1. *Nurse Educator*

■ The Nurse/Educator position was filled by a 56 year old woman, Johnsen, who had experience providing both clinical care and education to patients and others, and had several relevant advanced degrees and other experience. Summers does not contend that Johnsen lacked qualifications which would make her a competitive candidate for the job, except that Johnsen's most recent experience was in the field of HIV/AIDS, which was not, according to Summers, the focus of the job.

■ Summers' claim of age discrimination must fail as a matter of law because of the insignificant 2–3 year age difference between Summers and Johnsen. As the United States Supreme Court held in *O'Connor v. Consol. Coin Caterers Corp.*, a plaintiff cannot establish the inference that an employment decision was based on an illegal discriminatory criterion by "the replacement of one worker with another worker insignificantly younger." *Id.* at 313, 116 S.Ct. at 1310. "The circuits that have interpreted *O'Connor*," including the First Circuit, "are in accord that an age difference of less than five years is insufficient to support a prima facie case of age discrimination." *Williams v. Raytheon Co.*, 220 F.3d 16, 20 (1st Cir.2000), and cases cited. Since Summers cannot establish a *prima facie* case of age discrimination, summary judgment should enter in favor of Harvard in connection with the Nurse/Educator position.

### 2. *Coordinator*

■ Summers is also unable to establish a *prima facie* case of age discrimination in connection with the HUHS Coordinator position. Since the position was never filled, Summers cannot establish the fourth element of a *prima facie* case—"that, after [her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Absent proof of "a continued need for the same services and skills," summary judgment should enter in favor of Harvard on this claim as well. *Mesnick v. Gen. Elec. Co.,* 950 F.2d at 823.

### 3. *Assistant Director*

■ Assuming for purposes of the motion for summary judgment that Summers was qualified for the position (which Harvard does not concede), Summers has established a *prima facie* claim of age discrimination in connection with the position of Assistant Director of Administration and Training at HSPH. Thus, Summers is over 40, she applied for a position for which she was qualified and was rejected, and Harvard filled the position with a substantially younger candidate. However, Harvard has proffered a legitimate, non-discriminatory reason for its action. It contends that Nick was more qualified and that it preferred to hire an internal candidate. "This explanation satisfies [Harvard's] burden of providing a non-discriminatory reason for its conduct." *Benoit v. Technical Mfg. Corp.,* 331 F.3d 166, 174 (1st Cir.2003). Therefore, the burden is on Summers to establish that "(1) the employer's proffered reason was pretextual; and, (2) its true motive was age discrimination." *Ruiz v. Posadas de San Juan Assocs.,* 124 F.3d 243, 248 (1st Cir.1997). She has not met this burden.

"Courts may not sit as super personnel departments, assessing the merits—or even the rationality—of employers' nondis-

criminatory business decisions." *Mesnick v. Gen. Elec. Co.,* 950 F.2d at 825. It is not up to the court "to second-guess the business decisions of an employer, nor to impose our subjective judgments of which person would best fulfill the responsibilities of a certain job." *Petitti v. New England Tel. & Tel. Co.,* 909 F.2d 28, 31 (1st Cir.1990). "The reasonableness of the employer's reasons may of course be probative of whether they are pretexts. The more idiosyncratic or questionable the employer's reason, the easier it will be to expose it as a pretext ...." *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1012 n. 6 (1st Cir.1979). However, the focus must be on the employer's motivation, "not on its business judgment." *Id.*

In the instant case, Summers cannot point to any specific facts which would support an inference that Harvard acted with discriminatory intent. *See Petitti v. New Eng. Tel. & Tel. Co.,* 909 F.2d at 32. Summers, herself, argues only that she believes that since she was qualified for the job, the failure to interview her must have been due to discrimination. *See* DF ¶¶ 19–22. While Summers challenges Nick's experience in the field of HIV/AIDS as being relevant, even a cursory review of Nick's qualifications establishes that he had many of the experiences sought for the position, including, without limitation, developing curriculum, overseeing a program, grant writing, and interacting with faculty and the public. The fact that his recent focus was in the area of HIV/AIDS does not appear in any way to make him ineligible for the position. In short, the hiring of Nick was not so "idiosyncratic or questionable" as to raise even a suspicion of pretext on the part of Harvard.[6] Summers "may not simply refute or question the employer's reasons. To defeat summary judgment at this stage, a plaintiff must produce evidence that the real reason for the employer's actions was discrimination." *Gadson v. Concord Hosp.,* 966 F.2d 32, 34 (1st Cir.1992). Summers has failed to do so.

### C. Race Discrimination Claims

Summers also alleges in her complaint that she was not interviewed or hired by Harvard due to her race (Native American), a violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Title VII makes it illegal for an employer "to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ...." 42 U.S.C. § 2000e–2(a)(1).

Because Summers lacks any direct evidence that Harvard engaged in race discrimination, the *McDonnell Douglas* burden-shifting framework must be applied to this claim just as it was to the age discrimination claim discussed above. *Petitti v. New Eng. Tel. & Tel. Co.,* 909 F.2d at 31–32. The *prima facie* case "requires a showing that the plaintiff belongs to a racial minority, that plaintiff applied for a job for which he or she was qualified, that plaintiff was rejected and that the position thereafter remained open and the employer continued to search for applicants with plaintiff's qualifications." *Gadson v. Concord Hosp.,* 966 F.2d at 34 (citing *McDon-*

---

**6.** Because Nick's hiring was not clearly inappropriate, the fact that Summers may also have been qualified for the position does not support an inference of discrimination. Harvard was not under any obligation to interview all potentially qualified candidates, and this court cannot second-guess the defendant's business reasons for its selection among a group of qualified candidates where, as here, there is no evidence of discriminatory intent.

*nell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824). Again, the *prima facie* case "requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. at 312, 116 S.Ct. at 1310 (internal quotation and punctuation omitted). If Summers establishes a *prima facie* case of race discrimination, the burden of production (not persuasion) shifts to Harvard to provide a legitimate, non-discriminatory reason for the employment action. *Ruiz v. Posadas de San Juan Assoc.,* 124 F.3d at 248, and cases cited. If Harvard meets that burden, Summers then "faces a second hurdle—a demonstration that the employer's stated reason was not the real reason behind the decision not to hire plaintiff, but rather was a pretext for unlawful discrimination." *Gadson v. Concord Hosp.,* 966 F.2d at 34 (internal citation omitted). The undisputed facts compel the conclusion that Summers cannot meet her burden with respect to any of the positions.

### 1. *Nurse/Educator*

 Again assuming, *arguendo,* that Summers was qualified for this position, which Harvard does not concede, Summers has met her *prima facie* case with respect to the Nurse/Educator position. Summers is Native American, she applied for a position for which she was qualified and was rejected, and Harvard filled the position with a non-minority candidate. However, as detailed above, Harvard has put forward a legitimate reason for hiring Johnsen—namely, Johnsen's qualifications. Summers has not met her burden of showing the reason was pretex-

tual or that Harvard acted with discriminatory animus.

Although Johnsen may have worked in the field of HIV/AIDS, she clearly had relevant experience in patient and clinician education, as well as infection control and state immunization programs.[7] She also had a Masters of Public Health and Masters of Science in nursing in the adult nursing practitioner program, qualifications which were listed in the job posting. (*See* Harvard Mem. at Exhibit H (Summers' resume)). Like in the case of the hiring of Nick, as discussed above, there was nothing about the hiring of Johnsen which indicated that it was a pretext for discrimination. Summers has not "made a substantial showing that the reason given [by Harvard] . . . was false." *Williams v. Raytheon Co.,* 220 F.3d 16, 19 (1st Cir. 2000). Nor is there evidence which would sustain a finding that Harvard intentionally discriminated against her on account of her race. *See id.* Consequently, summary judgment should enter in favor of Harvard on this race discrimination claim.

### 2. *Coordinator*

 Summers' claim of race discrimination in connection with the HUHS Coordinator position must fail for the same reason as her age discrimination claim. The position was never filled and the employer did not continue "to seek applicants from persons of complainant's qualifications." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Therefore, Summers has failed to establish a *prima facie* case with respect to the Coordinator position.

---

7. Summers' resume did not indicate that she had extensive experience in providing patient education or that she had a Masters Degree in Nursing, which were requirements for the position. (Harvard Mem. at Ex. F (Summers' resume)). Nevertheless, for purposes of this motion, the court will assume she was qualified for the position.

### 3. *Assistant Director*

 Finally, the undisputed facts establish that Summers cannot sustain her burden of refuting the non-discriminatory reason proffered by Harvard in connection with the Assistant Director position. That position was filled by Nick, an African American. As detailed above in connection with Summers' age discrimination claim, Nick appears qualified for the position, and his hiring was not so "idiosyncratic or questionable" as to support an inference of discrimination. *See Loeb v. Textron, Inc.*, 600 F.2d at 1012 n. 6. Moreover, since Nick comes from a racial minority group, his hiring weighs against the inference that Harvard was racially motivated in failing to interview or hire Summers.[8] Summers has not provided sufficient evidence for a jury to disbelieve Harvard's reasons for its hiring decision, "let alone that those reasons masked racial discrimination." *Benoit v. Technical Mfg. Corp.*, 331 F.3d at 174. Consequently, Harvard's motion for summary judgment should be allowed as to race discrimination claims as well.

### IV. *CONCLUSION*

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Harvard's Motion for Summary Judgment (Docket No. 15) be ALLOWED.[9]

July 1, 2005.

8. While presumably the hiring of a member of one minority group does not per se preclude a finding of discrimination against another group, in the instant case Summers has not put forth any evidence that Harvard was particularly biased against Native Americans.

9. The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega*, 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn*, 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, 4 (1st Cir. 1998).