**Linda J. BARTHOLOMEW, Petitioner,**

v.

**STATE ETHICS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 11, 2002.
Decided March 27, 2002.

John J. Mead, Erie, for petitioner.

John J. Contino, Harrisburg, for respondent.

Before COLINS, President Judge, LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Linda J. Bartholomew petitions for review of Order No. 1195 of the State Eth-

ics Commission (Commission) finding that she violated Section 1103(a) of the Public Official and Employee Ethics Act (Ethics Act) [1] while serving as director of the Forest Warren Counties Department of Human Services (DHS) by using the authority of her office to hire her daughter, Sherrie Flannery, to provide computer training services to DHS personnel for the period from July 1, 1994, forward, and imposing restitution for the amount of compensation received by Flannery for these services.[2] We affirm in part, and reverse in part.

In 1979, Forest and Warren Counties combined the human services departments of each into DHS. One director oversees the associate directors of the several DHS programs, and three commissioners of Forest and Warren Counties compose a Governing Board which oversees DHS. Bartholomew was DHS director from 1991 to 1999.

Although most DHS positions are civil service positions, DHS used the services of contractual employees in its Information Systems Department to assist with the implementation of computer operations. As director, Bartholomew had the responsibility of filling these contractual positions. On April 1, 1993, Bartholomew approved the hiring of Flannery, and the salary to be paid, for one of these contractual positions with DHS. The contract of Flannery's employment was effective April 1, 1993 through June 30, 1993 at a rate of pay of $15.00 per hour. As DHS director, Bartholomew renewed Flannery's annual employment contract for the period of July of 1993 through June of 1998 at the same rate of pay.[3] From July of 1994 forward, Flannery received $4,927.50 in compensation from DHS based on her contract salary. Flannery also received the payment of expenses incurred while providing her contract services.

On May 12, 2000, the Commission issued an Investigative Complaint which charged Bartholomew with the instant violation of Section 1103(a) of the Ethics Act.[4] The

---

1. 65 Pa.C.S. § 1103(a). Section 1103(a) states, "[C]onflict of interest.—No public official or public employee shall engage in conduct that constitutes a conflict of interest." In turn, Section 1102 of the Ethics Act defines "conflict" or "conflict of interest", in pertinent part, as "[u]se by a public official or public employee of the authority of his office or employment ... for the private pecuniary benefit of himself, a member of his immediate family or a business with which he or a member of his immediate family is associated..." 65 Pa.C.S. § 1102(a). However, "private pecuniary benefit" is not defined in the Ethics Act.

2. In the order, the Commission also found four (4) other violations of Section 1103(a) of the Ethics Act, and one (1) violation of Section 1104(a). However, Bartholomew does not raise any allegation of error with respect to these additional violations in the instant appeal.

3. During this time period, Flannery was also employed as a sales representative with computer sales and service companies that conducted business with DHS.

4. Section 1108 of the Ethics Act provides, in pertinent part:

(a) **Preliminary inquiry.**—Upon a complaint signed under penalty of perjury by any person or upon its own motion, the commission, through its executive director, shall conduct a preliminary inquiry into any alleged violation of this chapter. The commission shall keep information, records and proceedings relating to a preliminary inquiry confidential...

\* \* \*

(c) **Initiation of investigation.**—If a preliminary inquiry establishes reason to believe that this chapter has been violated, the commission may, through its executive director, initiate an investigation to determine if there has been a violation. The commission shall keep information, records and proceedings relating to an investigation confidential until a final determination is made, except as oth-

complaint made the following relevant findings of fact:

erwise provided in subsection (g)... The commission shall, within 180 days of the initiation of an investigation, either terminate the investigation pursuant to subsection (d) or issue a findings report pursuant to subsection (e)...

* * *

**(e) Findings report.**—The commission, upon completion of an investigation, shall issue a findings report to the subject of the investigation setting forth the pertinent findings of fact. The subject shall have the right to respond to said findings and to request an evidentiary hearing on said matter... Any response to the findings report must either admit or deny by corresponding number and letter the pertinent facts set forth... Matters not specifically denied in the response shall be deemed admitted...

* * *

**(g) Procedure for hearing.**—Hearings conducted pursuant to this section shall be closed to the public unless the subject requests an open hearing. Any person who appears before the commission shall have all of the due process rights, privileges and responsibilities of a party or witness appearing before an administrative agency of this Commonwealth... At the conclusion of a hearing concerning an alleged violation and in a timely manner, the commission shall deliberate on the evidence and determine whether there has been a violation of this chapter... The determination of the commission, in the form of a final order and findings of fact, shall be a matter of public record.

65 Pa.C.S. § 1108(a), (c), (e), (g).

Likewise, Section 21.5 of the Commission's regulations states, in pertinent part:

(a) Within 72 hours of the commencement of an investigation, the complainant will be provided notification thereof by first class mail.

(b) The respondent will be provided with a general statement of the alleged violation of the act and other applicable statutes under investigation...

* * *

(d) The Commission may employ or be assigned staff, including attorneys, investigators and hearing officers, as may be required to properly investigate, review and dispose of complaints and investigations.

(e) The Executive Director, staff counsel, director of investigations and special investi-

95. The hiring of Flannery into a contract position, as consultant, was

gators have the authority to conduct interviews, take statements, receive and inspect documents and records and otherwise obtain evidence and gather information by lawful means.

(f) Commission staff members identified in subsection (e) are designated to administer oaths or affirmations for the purpose of obtaining voluntary sworn statements with regard to matters which may properly come before the Commission.

(g) A person having possession or control of documents or records deemed relevant to an investigation that the Commission is authorized to conduct may be required to produce the materials for inspection by subpoena served by the members of the Commission staff designated in subsection (e)...

(h) The Commission may authorize one or more members of the Commission staff designated in subsection (e) to obtain by subpoena the sworn statement of a person deemed to have information relevant to an investigation that the Commission is authorized to conduct...

* * *

(i) Subpoenas issued under subsection (g) or (h) will be authorized by the Commission and signed by the Chairperson or Vice Chairperson. Subpoenas may be served by a person empowered to do so or as designated by the Executive Director.

(j) Within 180 days of commencing the investigation, the Commission will do one of the following:

* * *

(3) Issue a findings report which sets forth the pertinent facts, and affords the subject of the investigation an opportunity to respond to the findings and to request an evidentiary hearing.

(k) The respondent shall file a response to the findings report of the Commission within 30 days...

(1) The respondent shall admit or deny the allegations in the findings report by number. Anything not specifically denied or general denials will be deemed an admission of the individual factual finding.

(2) New matter raised by a respondent in his answer does not require a reply by the Commission...

51 Pa.Code § 21.5(a), (b), (d)-(i), (j)(3), (k).

approved by the Governing Board in or around April 1994.

a. No official vote of the board is recorded.

b. Flannery had already served for approximately one year on a contractual basis with DHS prior to this approval.

96. Conditions were placed on the contract hiring of Flannery by the Governing Board.

a. [Marlene Leidecker, the director of the Information Systems Department of DHS,] was to negotiate the rate of pay.

b. Leidecker was to supervise Flannery.

c. Leidecker was to communicate any problems, disciplinary or otherwise, directly to the Governing Board.

d. Any expansion or changing of the contract required Governing Board approval.

Reproduced Record (R.R.) at 8a.[5] On August 9, 2000, Bartholomew filed an answer to the Investigative Complaint which admitted the foregoing findings of fact. *See* R.R. at 15a.

On January 17, 2001, a hearing was conducted before members of the Commission. *See* N.T. 1/17/01 [6] at 7–486. On May 30, 2001, the Commission mailed a Final Adjudication and Order in which made the following relevant findings and conclusions:

80. Averment 95 of the Investigative Complaint which was admitted by Bartholomew in her Answer states: "The hiring of Flannery into a contract position, as consultant, was approved by the Governing Board in or around April 1994.

a. No official vote of the board is recorded.

b. Flannery had already served for approximately one year on a contractual basis with DHS prior to this approval."

a. In that the above is inconsistent with other evidence of record which shows that the Governing Body never gave such an approval, the above averment has been excluded as a Fact Finding.

81. Conditions were placed on the contract hiring of Flannery by the Governing Board.

a. Leidecker was to negotiate the rate of pay.

b. Leidecker was to supervise Flannery.

---

5. Consonant with the provisions of Section 1108 of the Ethics Act, and Section 21.5 of the Commission's regulations, the first page of the Investigative Complaint issued in this case stated the following, in pertinent part:

The Investigative Division of the [Commission] has now completed its investigation. The attached Findings Report restates the individual allegation(s) and the individual fact findings relative to the allegation(s). The Findings Report constitutes a Formal Complaint by the Investigative Division of the [Commission].

**You must file an answer to the attached Findings Report which must be received by the Commission within thirty (30) days of the issuance of the Findings Report.** You must admit or deny in writing by corresponding number and letter the individual fact findings contained in the Findings Report. If you deny a finding of fact, you must state your denial plus set forth your view of the contested fact(s). Matters not specifically denied will be deemed admitted. Failure to respond or general denials will be considered a default and deemed an admission of the individual fact findings. 51 Pa.Code § 21.5(1).
R.R. at 3a (emphasis in original).

6. "N.T. 1/17/01" refers to the transcript of the hearing conducted before members of the Commission on January 17, 2001. A review of the transcript indicates that the Investigative Complaint was neither offered nor admitted into evidence at the hearing.

c. Leidecker was to communicate any problems, disciplinary or otherwise, directly to the Governing Board.

d. Any expansion or changing of the contract required Governing Board approval.

* * *

Turning to the consulting services that Flannery performed for DHS on an annual basis, Bartholomew used the authority of her office to retain Flannery to provide such training services. Bartholomew did not seek approval of the Governing Board to retain Flannery. Although Bartholomew asserts that the Governing Board approved the hiring of Flannery in April of 1994, the Board did not give any such approval. To the contrary, Bartholomew entered into contracts, the first being for the period from April 1, 1993, until June 30, 1993, for Flannery to provide training services to DHS personnel at the rate of $15 per hour. Thereafter on a fiscal basis, July 1st to June 30th, Bartholomew entered into subsequent contracts with Flannery and signed on behalf of DHS as its Director. The execution of each annual contract by Bartholomew with Flannery was a use of authority of office. Bartholomew solely made the decision to retain Flannery and executed the contracts by signing as DHS Director. Such uses of authority of office each year by Bartholomew resulted in private pecuniary benefits consisting of the compensation that Flannery received for providing those services. That private pecuniary benefit inured to Flannery who is a member of Bartholomew's immediate family as noted above. Bartholomew violated Section [1103(a)] when she used the authority of office to retain her daughter on a yearly basis to provide training services for personnel at DHS for the fiscal years

July 1, 1994, to June 30, 1995, and thereafter.

R.R. at 181a, 200a.

Based on the foregoing, the Commission concluded, *inter alia,* that: (1) Bartholomew violated Section 1103(a) of the Ethics Act by using the authority of her office to hire Flannery to provide computer training services to DHS personnel for the period from July 1, 1994 and forward; (2) Flannery had received $4,927.50 in compensation from DHS based upon her contract salary; and (3) Bartholomew must make restitution in the amount of $24,165.12, which included the $4,927.50 that Flannery had received in compensation from DHS based upon her contract salary. *See Id.* at 202a–203a. As a result, the Board issued Order No. 1195 which states, in pertinent part:

5. Bartholomew violated Section [1103(a)] of the Ethics Act when she used the authority of her office to hire her daughter to provide computer training services to DHS personnel for the period from July 1, 1994, forward.

* * *

7. Bartholomew is directed within 30 days of the date of mailing of this order to make payment of $24,165.12 through this Commission to the Commonwealth of Pennsylvania. Failure to comply will result in the institution of an order enforcement action.

*Id.* at 204a. Bartholomew then filed the instant petition for review.

In this appeal, Bartholomew claims: (1) the Commission erred in disregarding Finding of Fact 95 of the Investigative Complaint in Finding of Fact 80 in the Final Adjudication; (2) the Commission's Finding of Fact 80 in the Final Adjudication is not supported by substantial evidence; and (3) the Commission erred in

determining that she violated Section 1103(a) of the Ethics Act.

■ We initially note that this Court's scope of review of a Commission adjudication is limited to a determination of whether constitutional rights have been violated, if an error of law has been committed, or whether the findings of the Commission are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Snyder v. State Ethics Commission,* 686 A.2d 843 (Pa. Cmwlth.1996). Substantial evidence is such relevant evidence as a reasonable person would consider adequate to support the finding. *Id.*

■ In this appeal, Bartholomew claims that the Commission erred as a matter of law by disregarding Finding of Fact 95 of the Investigative Complaint in Finding of Fact 80 of the Final Adjudication. Bartholomew alleges that because the findings of fact in the Investigative Complaint state that Flannery's hiring was approved by the Governing Board, and because Bartholomew admitted this fact in her answer, the Commission was bound by this factual determination. In addition, Bartholomew asserts that because the Commission based its determination of a violation of Section 1103(a) on a contrary finding of fact, its determination in this regard must be reversed. We agree.

As it has been previously noted:

[W]hen the term admission is used without any qualifying adjective the customary meaning is an evidentiary admission, that is, words in oral or written form or conduct of a party or a representative offered in evidence against the party. *Evidentiary* admissions are to be distinguished from *judicial* admissions. Judicial admissions are not evidence at all. Rather, they are formal concessions in the pleadings in the case or stipulations by a party or its counsel that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. Thus, the judicial admission, unless allowed by the court to be withdrawn, is conclusive in the case, whereas the evidentiary admission is not conclusive but is always subject to contradiction or explanation.

Judicial admissions may arise from a party's statement in its pleadings ... [or] a party's failure to respond as required by the pleading rules... An attorney's admission during the course of a trial is treated as a judicial admission. A party's statements in its brief or oral argument to the trial court are treated as a judicial admission.

As McCormick indicates, judicial admissions are conclusive. A party may not offer evidence to contradict the judicially admitted facts...

L. Packel and A. Poulin, Pennsylvania Evidence 2d ed. § 127, at 30–31 (1999) (footnotes and citations omitted).[7]

---

7. *See also Duquesne Light Co. v. Woodland Hills School District,* 700 A.2d 1038, 1053–1054 (Pa.Cmwlth.1997), *petition for allowance of appeal denied,* 555 Pa. 722, 724 A.2d 936 (1998) ("Evidentiary admissions generally refer to statements made by a party of 'certain facts'. Judicial admissions are formal admissions which have the effect of withdrawing a fact from issue and dispensing it without the need for proof of the fact. Judicial admissions are conclusive, whereas evidentiary admissions may always be contradicted or explained. Generally, statements made by a party in the pleadings, requests for admissions and stipulations of facts are treated as judicial admission. The rationale is to expedite the trial by eliminating the need for proof of facts which are not disputed ...") (citations omitted); *Sherrill v. Workmen's Compensation Appeal Board (School District of Philadelphia),* 154 Pa.Cmwlth. 492, 624 A.2d 240, 243 (1993) ("[A] judicial admission is 'an express waiver made in court or preparatory to trial by a party or his attorney, conceding for the purposes of trial, the truth of the admission', and may be contained in pleadings, stipulations and other like documents. An

As noted above, pursuant to the provisions of Section 1108 of the Ethics Act, the Commission conducted an investigation regarding Bartholomew's purported violation of Section 1103(a), and issued the instant Investigative Complaint. In Findings of Fact 95 and 96, the Commission found as fact that the Governing Board approved the hiring of Flannery into a contract position in or around April of 1994, and that the Governing Board placed conditions upon the contract hiring of Flannery. Bartholomew admitted these Findings of Fact in her answer to the Investigative Complaint. As a result, these facts were binding upon the Commission, and the Commission was precluded from making contrary findings of fact in its Final Adjudication.[8]

In asserting that it was not bound by Finding of Fact 95 of its Investigative Complaint, the Commission contends that Bartholomew was required to offer the Investigative Complaint into evidence pursuant to Section 35.125(d) of the General Rules of Administrative Practice and Procedure.[9] However, this assertion over-

---

important facet of such an admission is that it has been made for the advantage of the admitting party and once the admission has been made, the party making it is not allowed to introduce evidence attempting to disprove it.") (citations omitted); *Sule v. Workmen's Compensation Appeal Board (Kraft, Inc.),* 121 Pa.Cmwlth. 242, 550 A.2d 847, 849 (1988), *petition for allowance of appeal denied,* 522 Pa. 608, 562 A.2d 829 (1989) ("It is well settled that an admission of an attorney during the course of a trial is binding upon his client. We view the statement by the attorney as an admission by Employer that Claimant's arm continues to be useless. A termination of benefits is proper only when the work-related disability ceases entirely. Therefore, the referee and the Board erred in terminating benefits when the continuing medical disability was admitted by Employer.") (citations omitted); *Piper Aircraft Corp. v. Workmen's Compensation Appeal Board (Bibey),* 86 Pa. Cmwlth. 614, 485 A.2d 906, (1985) ("The only evidence of the availability of work ... was given by Claimant's attorney, who admitted that the position ... was still available, but that Claimant was on 'lay-off status'. The Board dismissed this evidence because the attorney was not sworn to testify and did not testify to his personal knowledge of this fact. It is well settled, however, that an admission of an attorney during the course of a trial is binding upon his client.") (citation omitted).

8. Moreover, at the hearing in this case, counsel for the Commission's Investigative Division stated the following, in pertinent part:

But this is the basis and ... the genesis of the Commission's investigation. Interestingly, we're not here today to prove that there has been a violation of the Ethics Law. Th[at] phase of this case is over. If you review the investigative complaint in this matter, in specific comparison to the Answer that has been filed, you will see that the relevant findings necessary to prove a violation of the Ethics Law in this matter have been admitted. And there's no question on that the pleadings, per se, a violation of the Ethics Law has been established.

And I want you to just take a minute to look at this. Because obviously you have to make that ultimate decision and ultimate conclusion. But I am submitting to you that for the purposes of today's hearing, that has been done.

\* \* \*

These are the facts. They are admitted. They cannot be denied. They cannot be changed. And without question, these facts prove beyond any doubt whatsoever that there is already before you the evidence of a violation of the Ethics Law, and that [Bartholomew] used her public office in an effort to obtain a private pecuniary benefit for her daughter, for a business with which her daughter is associated ...

N.T. 1/17/01 at 23–24, 28. These statements of the Commission's counsel demonstrate the binding nature of the admitted Findings of Fact, and they are likewise binding upon the Commission. *See Sule; Piper Aircraft Corp.*

9. Section 35.125(d) of the General Rules of Administrative Practice and Procedure states:
(d) The following shall also apply:
(1) The applications (including attached exhibits), complaints, orders to show cause and answers thereto and similar formal documents upon which hearings are fixed shall, without further action, be considered as parts of the record as pleadings.

looks Section 21.25 of the Commission's regulations [10], which supersedes the provisions of Section 35.125 of the General Rules of Administrative Practice and Procedure.

In addition, as this Court has previously noted:

It is true that in trials, especially in jury trials, it is necessary that the party who attempts to prove a fact crucial to his case by an admission in a pleading must do so by reading the averment and the admission into the record. *Buehler v. United States Fashion Plate Co.*, 269 Pa. 428, 112 A. 632 (1921); *Churilla v. Barner* [409 A.2d 83, 269 Pa.Super. 100 (1979) ]; *Volpe v. Atlantic Crushed Coke Co.* [220 A.2d 393, 208 Pa.Super. 11 (1966) ]. We are of the opinion, however, that the same rule does not hold true in an election hearing where the pleadings are a necessary part of the evidentiary record in order to enable the hearing judge to determine what is at issue. This is especially so in election cases such as this one where there are many factual allegations for the judge to adjudicate. There is no necessity for counsel to call to the court's attention what is already before it by virtue of the plead-

ings. We think it would be particularly unfair in such a setting for a party to disavow that which it has admitted in a pleading. *See Tops Apparel Manufacturing Co. v. Rothman*, 430 Pa. 583, 244 A.2d 436 (1968).

Inasmuch as the hearing judge stated that he had actual knowledge of the content of the pleadings, he was then bound to consider them in adjudicating the matter before him. We hold that the hearing judge erred when he concluded that he could not consider an admission in the pleadings in making a determination of a critical fact. *In re Petition of Shuli*, 105 Pa.Cmwlth. 462, 525 A.2d 6, 8 (1987), *aff'd per curiam*, 514 Pa. 471, 526 A.2d 300 (1987).[11]

Likewise, in proceedings before the Commission, there was no need for Bartholomew to call to the Commission's attention that which is already before it by virtue of its own pleadings. Pursuant to Section 1108(a) of the Ethics Act, the Commission conducted a preliminary inquiry into Bartholomew's purported violation of Sections 1103 and 1104. Pursuant to Section 1108(c) of the Ethics Act, the Commission conducted an investigation to determine if Bartholomew had violated

(2) In no event, except in the case of a noncontested proceeding, may the pleadings be considered as evidence of fact other than that of the filing thereof unless offered and received in evidence under this part.
1   Pa.Code § 35.125(d).

**10.**   Section 21.25 of the Commission's regulations states, in pertinent part:

(a) The formal rules of evidence will not apply to hearings. Relevant probative evidence except properly objected-to hearsay will be admitted.
(b) Testimony shall be given under oath or affirmation and witnesses shall be subject to cross-examination.
(c) The investigative staff of the Commission will present its case followed by the case of the respondent.

\* \* \*

(k) Subsection (a) supersedes 1 Pa.Code § 35.161 (relating to form and admissibility of evidence). Subsection (b) supersedes 1 Pa. Code § 35.137 (relating to oral examination). Subsection (c) supersedes 1 Pa.Code § 35.125 (relating to order of procedure).
51   Pa.Code § 21.25(a)-(c), (k).

**11.**   *See also In re Petition to Contest General Election for Dist. Justice in Judicial Dist. 36–3–03 Nunc Pro Tunc*, 695 A.2d 476 (Pa. Cmwlth.1997), *petition for allowance of appeal denied*, 556 Pa. 715, 729 A.2d 1132 (1998) (In an election recount and contest case, a candidate's concession that 15 ballots were altered constituted an admission, even though the concession was made in a brief filed with trial court and in oral argument, quoting *In re Petition of Shuli*.).

Sections 1103 and 1104. Pursuant to Section 1108(e) of the Ethics Act, the Commission issued the instant Investigative Complaint in which it made Findings of Fact 95 and 96, and Bartholomew admitted these Findings of Fact in her answer to the Investigative Complaint.

It is certainly disingenuous for the Commission to argue to this Court that Bartholomew was required to offer into evidence, at the hearing before members of the Commission, the document prepared by the Commission, containing findings of fact of the Commission, and which was the result of an investigation conducted by the Commission. This is particularly so where, as here, counsel for the Commission's Investigative Division acknowledged on the record that the relevant findings of fact underlying the instant proceedings had been admitted by Bartholomew, and that these admitted facts "cannot be denied" and "cannot be changed". *See* N.T. 1/17/01 at 23–24, 28. In short, based upon the provisions of the Ethics Act and the Commission's regulations, the Commission was bound by the admitted Finding of Fact 95 of its Investigative Complaint, and erred in "excluding" this Finding of Fact in Finding of Fact 80 of its Final Adjudication.[12]

Moreover, in determining that Bartholomew committed the instant violation of Section 1103(a) of the Ethics Act the Commission stated, in pertinent part, that "[she] did not seek approval of the Governing Board to retain Flannery. Although [she] asserts that the Governing Board approved the hiring of Flannery in April of 1994, the Board did not give any such approval." *See* R.R. at 200a. Because the Commission's determination that Bartholomew violated Section 1103(a), by using the authority of her office to hire Flannery to provide computer training service to DHS personnel, is based upon Finding of Fact 80 of its Final Adjudication which erroneously "excluded" the admitted facts in Finding of Fact 95 of its Investigative Complaint, that portion of the Board's order must be reversed.[13]

Accordingly, the order of the Commission is affirmed in part, and reversed in part.

## ORDER

AND NOW, this *27th* day of *March*, 2002, that portion of Order No. 1195 of the State Ethics Commission, dated May 30, 2001 at File Docket 99–018–C2, stating "Bartholomew violated Section 3(a)/1103(a) of the Ethics Act when she used the au-

**12.** As a corollary to this claim, Bartholomew asserts that the Commission's exclusion of Finding of Fact 95 of the Investigative Complaint in Finding of Fact 80 of the Final Adjudication also violates her due process rights. As noted above, Section 1108(g) of the Ethics Act provides, in pertinent part, that "[a]ny person who appears before the commission shall have all of the due process rights..." 65 Pa.C.S. § 1108(g). As a component of due process, the Pennsylvania Supreme Court has noted that "[a]n adjudicatory action cannot be validly taken by any tribunal, whether judicial or administrative, except upon a hearing wherein each party has opportunity to know of the claims of his opponent..." *Callahan v. Pennsylvania State Police*, 494 Pa. 461, 465, 431 A.2d 946, 948 (1981). Although Bartholomew's allegation

of error may implicate the foregoing component of due process, we will not reach the merits of this constitutional claim as this matter can be resolved on nonconstitutional grounds. *See, e.g., Krenzelak v. Krenzelak*, 503 Pa. 373, 469 A.2d 987 (1983) (The Supreme Court should not decide a constitutional question unless absolutely required to do so.); *Mt. Lebanon v. County Board of Elections of Allegheny County*, 470 Pa. 317, 368 A.2d 648 (1977) (same).

**13.** As noted above, in this appeal Bartholomew does not raise any allegation of error with respect to the additional violations of the Ethics Act as found by the Commission, or the restitution imposed therefor. As a result, the Commission's order will be affirmed in all other respects.

thority of her office to hire her daughter to provide computer training services to DHS personnel for the period from July 1, 1994, forward.", and requiring the payment of $4,927.50 in restitution therefor, is reversed; Order No. 1195 of the State Ethics Commission is affirmed in all other respects.