IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William R. Hoy,                          :
                Appellant     :
                                :
        v.                               :      No. 1005 C.D. 2015
                                :
Borough of Cochranton                    :

# **O R D E R**

NOW, December 21, 2016, upon consideration of appellant's application for reargument and appellee's answer, the application is granted but only insofar as it seeks a reconsideration of the opinion.

The opinion and order filed on October 18, 2016, are withdrawn.

The attached opinion and order are entered.


                                    _____
                                    Mary Hannah Leavitt
                                    President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William R. Hoy,                          :
                   Appellant             :
                                         :   No. 1005 C.D. 2015
             v.                          :
                                         :   Argued:  September 15, 2016
Borough of Cochranton                    :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JOSEPH M. COSGROVE, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                              FILED:  December 21, 2016


             William Hoy (Hoy) appeals from the March 9, 2015 order of the Court of Common Pleas of Crawford County (trial court) granting summary judgment in favor of the Borough of Cochranton (Borough) on his claims of gender and age discrimination.  We affirm.


**Facts/Procedural History**

             The background of this case, viewed in the light most favorable to Hoy as the non-moving party, may be summarized as follows.  Hoy is a retired Pennsylvania State Trooper with twenty-five years of experience.  At first, Hoy worked as a Patrol Trooper and was thereafter promoted to Corporal in 1993, the latest position of which he worked during the last fourteen years of his employment.

On a temporary basis, Hoy also served as acting Sergeant when a Sergeant retired. Hoy's work experience with the Pennsylvania State Police includes responding to incidents of a serious nature; supervising patrol officers; evaluating patrol troopers' performance; and maintaining positive public relations with municipal police in the Meadville and surrounding area. (Reproduced Record (R.R.) at 204a-13a.)

The Borough's then Police Chief, Michael Phillips, announced at a Borough Council meeting on May 14, 2012, that he would retire, effective July 6, 2012. At this meeting, former Police Chief Phillips recommended that his subordinate, Sergeant Heather Beachy, be promoted to Chief of Police. The Borough Council declined this recommendation at that time, and approved a motion to advertise the vacancy, and an advertisement appeared in a local newspaper on May 17, 2012. Hoy applied for the position via letter and resume dated May 14, 2012, and became MPOETC (Municipal Police Officers' Education & Training Commission) certified after the position was advertised. Hoy, a male, was fifty-nine years old when he applied for the position of Police Chief. (R.R. at 224a-29a, 279a-81a.)

Beachy, a thirty-three-year-old female at the time of the application process, attended Mercyhurst Police Academy for six months, graduating on July 15, 2005, and then worked as a part-time police officer for the Borough, sixteen hours per week, until she became a full-time officer and Sergeant on July 1, 2009. Beachy's job duties as a police officer included street patrol, traffic stops, and handling various domestic disturbance calls. Since 2009, Beachy and former Police Chief Phillips were the only full-time officers working for the Borough. As Sergeant, Beachy supervised two to four other part-time officers and observed former Police Chief Phillips perform his particular job duties. Beachy also served temporarily as the acting Chief of Police when former Police Chief Phillips was out on medical leave.

Once he decided that he was going to retire, former Police Chief Phillips trained Beachy with administrative tasks, budgeting, crime reports, and other matters associated with the role of Chief of Police. (R.R. at 268a-91a, 317a-18a; Trial court op. at 7.)

On June 19, 2012, during an executive session, the Borough Council narrowed the list to four candidates. Of the four, only Beachy and Hoy were residents of the Borough, and the other two were eliminated from consideration on that basis. On July 2, 2012, the Borough Council held a meeting open to the public and a motion was made to promote Beachy to the position of Police Chief; the motion was passed by unanimous vote. During the selection process, the Borough Council did not conduct any interviews. The Borough Council subsequently sent a rejection letter dated (or misdated) June 27, 2012 to all the unsuccessful applicants, which, including Hoy, consisted of twenty-six males. (R.R. at 382a-97a; Trial court op. at 1-2.)

On September 4, 2013, Hoy filed the instant suit against the Borough, alleging gender and age discrimination in the hiring of Beachy as Police Chief, in violation of the Pennsylvania Human Relations Act (PHRA).[1]

Thereafter, the parties conducted discovery, gathering documentary evidence and memorializing testimonial statements. William Shorts, President of the Borough Council, testified that he was aware of Hoy's credentials, but was adverse to hiring Hoy because he did not like Hoy's demeanor and felt that Hoy was not friendly or had any budgeting experience. Other Council members stated that they were generally familiar with Hoy because he resided in the Borough since 1996, had been

---

[1] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§951-963.

3

a football coach at the local high school for at least thirteen years, attended Council meetings, and visited the Borough's office. They further offered uncontradicted testimony that the decision to hire Beachy was not made until the July 2, 2012 meeting and that the rejection letters reflecting a date of June 27, 2012, contained a typographic error. (R.R. at 135a-36a, 214a, 244a, 289a-92a.)

Bart Waite, the Mayor of the Borough, stated that he and the Borough's Council decided not to interview Hoy because they did not think he was the best person for the position. Waite stated that he never told a news reporter that it would be beneficial to the community to have a female as the Chief of Police, but noted that the article stated that Beachy was the first female to assume that position within Crawford County. According to Waite, he was not aware that Beachy was the first female Chief of Police in the county until he read the article. Waite added that he did not think Hoy would be good at orchestrating community relations based upon his knowledge of complaints involving Hoy in his role as the high school football coach. (R.R. at 304a-11a, 393a; *see* Trial court op. at 5 n.4.)

The Borough's witnesses also explained that the Borough received several unsolicited recommendations from residents of the Borough in favor of hiring Beachy, while Hoy did not have any. (R.R. at 92a, 128a, 131a.) Ultimately, the Borough Council stated that it voted to hire Beachy for nine reasons; specifically, because she: (1) performed admirably in her role as Sergeant; (2) was active in the community with regard to school and neighborhood watch programs; (3) had a positive attitude; (4) received several unsolicited recommendations from Borough citizens; (5) had experience handling police business in a small borough, particularly enforcing the Borough's local ordinances; (6) had experience handling the Borough's Police Department's budget; (7) was known to be dependable and exceeded the

4

expectations of the Borough Council; (8) was mentored by former Chief of Police Phillips, who recommended that she replace him upon his retirement; and (9) had successfully filled in as the acting Chief of Police when former Chief of Police Phillips was out on medical leave. (R.R. at 112a, 152a-53a; Trial court op. at 7.)

In addition, the Borough submitted a document detailing the general statement of duties, typical examples of work, and desirable qualifications for the Chief of Police position. In his deposition, Hoy testified that he met all of the requirements for the position as outlined in this document. However, Hoy also testified that he never prepared a budget for a police department; did not have experience working with a mayor and/or council of a small borough; did not specifically deal with MPOETC regulations while working for the Pennsylvania State Police; and never had to patrol or visit the Borough for police-related business. Nevertheless, Hoy proffered testimony from Borough residents who stated, in general, that Hoy enjoys a good reputation in the community and expressed their belief that he was more qualified for the position of Chief of Police than Beachy. (R.R. at 94a-97a, 174a-75a, 234a-35a, 255a, 366a-69a.)

At the close of discovery, on August 7, 2014, the Borough filed a motion for summary judgment, contending that Hoy failed to adduce sufficient evidence to make out a case for gender and/or age discrimination. By memorandum and order dated March 9, 2015, the trial court granted the Borough's motion.

In its memorandum, the trial court first concluded that under the burden-shifting paradigm for employment discrimination cases, Hoy failed to carry his initial burden of establishing a *prima facie* case. In reaching this conclusion, the trial court determined that, when compared, Hoy and Beachy were not "similarly situated persons." (Trial court op. at 4.) The trial court determined that, unlike Hoy, Beachy

was an internal candidate that was already employed by the Borough and previously served as its acting Chief of Police. *Id.* at 3-6.

Next, the trial court concluded that even if Hoy established a *prima facie* case of discrimination, the Borough offered nine legitimate, nondiscriminatory reasons for selecting Beachy over Hoy. In doing so, the trial court stated:

> Promoting from within a department rather than hiring from outside is certainly lawful. The [Borough] Council's decision to advertise the position and plumb the universe of qualified candidates, rather than simply adopting [former] Chief Phillip's recommendation, should not open the Borough to charges of discrimination by any rejected applicant whose gender, age, race, etc., differed from Beachy's.
>
> *       *       *
>
> The only hiring reason which Hoy maintains lacks credulity is Beachy having been already employed by the Borough and having acted during Chief Phillip's leave of absence as police chief, which he contends is "highly inconsistent" with advertising the position. On the contrary, the [Borough] may have advertised for the sake of appearances, thereby hiding its lawful predisposition to promote Sergeant Beachy . . . . [Hoy] challenges each other reason with only his qualifications for the job, from which, he asserts, discriminatory motivation can be inferred. Equal or even superior qualifications do not suffice as evidence of pretext . . . . Not interviewing applicants to determine their qualifications may have been imprudent or ill-advised, but is not evidence of an intent to discriminate against Hoy on the basis of his age or gender.

(Trial court op. at 6-7.)

6

Hoy filed a notice of appeal,[2] and the trial court ordered him to file a Pa.R.A.P. 1925(b) statement. After Hoy filed his statement, the trial court relied upon its memorandum and order dated March 9, 2015, to satisfy its obligations under Pa.R.A.P. 1925(a) and justify its grant of summary judgment in favor of the Borough.

## Discussion
### Employment Discrimination Law

Here, Hoy asserted claims for gender and age discrimination under the PHRA. Importantly, claims brought under the PHRA are analyzed under the same standards as their federal counterparts and, therefore, Pennsylvania courts use federal interpretations of the federal anti-discrimination statutes to guide and inform our interpretations of the PHRA. *Kroptavich v. Pennsylvania Power and Light Company*, 795 A.2d 1048, 1055 (Pa. Super. 2002); *see Sarullo v. United States Postal Service*, 352 F.3d 789, 797-98 (3d Cir. 2003). In failure-to-hire employment discrimination cases on the basis of sex or age, Pennsylvania courts employ a three-part burden shifting analysis developed by the United States Supreme Court. *Spanish Council of York, Inc. v. Pennsylvania Human Relations Commission*, 879 A.2d 391, 397 (Pa. Cmwlth. 2005).

Under this analytical model, a complainant is first required to establish a *prima facie* case of discrimination. The Pennsylvania Supreme Court in *General Electric Corp. v. Pennsylvania Human Relations Commission*, 365 A.2d 649 (Pa. 1976), adopted the United States Supreme Court's analysis in *McDonnell-Douglas Corporation v. Green*, 411 U.S. 792 (1973), for establishing a *prima facie* case,

---

[2] Hoy's notice of appeal was filed with the Superior Court, which, by *per curiam* order dated April 13, 2015, transferred the appeal to this Court.

7

which requires a complainant to demonstrate the following: (1) the complainant belongs to a protected class; (2) he applied for a job for which the employer was seeking applicants; (3) despite his qualifications, he was not hired; and (4) after the rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *McDonnell-Douglas*, 411 U.S. at 802; *General Electric Corp.*, 365 A.2d at 655-56. Notably, this *prima facie* test is adaptable to accommodate differences in the nature of the discrimination alleged. *Allegheny Housing Rehabilitation Corp. v. Pennsylvania Human Relations Commission*, 532 A.2d 315, 317 (Pa. 1987). This standard is, to be sure, adaptable to accommodate differences in the nature of the discrimination alleged (e.g., sex rather than race) and in the action alleged to be improper (e.g., discharge rather than refusal to hire). "The form it takes, however, must be appropriate to its function, which is to eliminate the most common nondiscriminatory reasons for the employer's action." *Id.* at 318 (citation omitted). Ultimately, the burden on the complainant of presenting a *prima facie* case is "minimal." *Kroptavich*, 795 A.2d at 1055.

If the complainant establishes a *prima facie* case, a presumption of discrimination arises, and the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision. *Spanish Council of York*, 879 A.2d at 397. However,

> [t]he employer's burden in this second part is one of production, not persuasion, and thus involves no credibility assessment. If the employer articulates a legitimate business explanation, then the presumption of discriminatory intent created by the employee's [*prima facie*] case is rebutted and the presumption simply drops out of the picture.

*Kroptavich*, 795 A.2d at 1055 (internal citations and quotations omitted).

8

Assuming the employer satisfies its burden of production at the second stage, the third and final part of the analytical framework gives the complainant the opportunity to show that the legitimate reasons proffered by the employer were pretexts for what, in reality, was a discriminatory motivation. *Id.* If this complainant satisfies this burden, the complainant will survive summary judgment and, at trial, must convince the factfinder that not only was the employer's proffered reason false, but that the real reason was impermissible discrimination. *Willis v. UPMC Children's Hospital of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015); *see Kroptavich*, 795 A.2d at 1055.

## Stage One: *Prima Facie* Case

On appeal,[3] Hoy contends that the trial court committed legal error in determining that he failed to state a *prima facie* case of discrimination on the basis that he and Beachy were not similarly situated. (*See* Trial court op. at 3-6.) According to Hoy, the fourth element of a *prima facie* case of age or sex employment discrimination can be satisfied by simply showing that he was not hired under circumstances that raise an inference of discriminatory action.

In response, the Borough asserts that the trial court properly held that Hoy had failed to make out a *prima facie* case because he was unable to satisfy the

---

[3] "Our standard of review of the grant of summary judgment is *de novo* and our scope of review is plenary." *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011). Summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1221-22 (Pa. 2002) (internal citations omitted). In assessing a grant of summary judgment, an appellate court must view the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. *Id.*

fourth element of the *prima facie* test: that is, he is not similarly situated to Beachy because Beachy was an internal candidate and Hoy was not.

In a failure-to-hire case on the basis of sex, the United States Court of Appeals for the Third Circuit, as well as other circuits, have concluded that the fourth element of a *prima facie* case does not impose a similarly situated requirement or the introduction of what is commonly referred to as comparator evidence. *Sarullo*, 352 F.3d at 798 n.7 ("The defendants suggest that the fourth element requires a showing that 'other similarly situated employees outside [the complainant's] protected class were more favorably treated under similar circumstances.' . . . [T]hat is not the current law in this or the majority of the circuits. . . . We require only that the plaintiff show that the employer continued to seek out individuals with similar qualifications after refusing to rehire the plaintiff under circumstances that raise an inference of unlawful discrimination."); *see, e.g., Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000) ("[C]omparison to a person outside of the protected class in the fourth prong of the *prima facie* case is unnecessary to create an inference of discriminatory discharge.").[4] Instead, proof that a person outside of the protected class was similarly situated, possessing nearly identical characteristics or qualifications, although capable of contributing to the development of a *prima facie* case, is most appropriately considered after the employer proffers a nondiscriminatory reason for its action. *See Marzano v. Computer Science Corp., Inc.*, 91 F.3d 497, 510-11 (3d Cir. 1996) ("All employees can be characterized as

[4] In the context where the employer takes disciplinary action against an employee, some courts require that the complainant establish, as part of the *prima facie* burden, that the employer treated similarly situated employees outside of the class more favorably. *See Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007). Because this is a failure-to-hire case, and not a situation when an existing employee is reprimanded or discharged, we need not consider whether it is absolutely necessary for a complainant to adduce such evidence in the latter types of cases.

unique in some ways and as sharing common ground with 'similarly situated employees' in some other ways, depending on the attributes on which one focuses, and the degree of specificity with which one considers that employee's qualifications, skills, tasks and level of performance . . . arguments as to the employee's uniqueness should be considered in conjunction with, and as part of, the employer's rebuttal — not at the *prima facie* stage."); *Conward v. Cambridge School Committee*, 171 F.3d 12, 19-20 (1st Cir. 1999) ("[T]he time to consider comparative evidence in a disparate treatment case is at the third step of the burden-shifting ritual, when the need arises to test the pretextuality *vel non* of the employer's articulated reason for having acted adversely to the plaintiff's interests.").

In an age discrimination case, the United States Court of Appeals for the Third Circuit has held that the fourth element of a *prima facie* case is satisfied where the complainant can point "to a sufficient age difference between himself and his replacement such that a fact-finder can reasonably conclude that the employment decision was made on the basis of age." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995). The court in *Sempier* further explained: "Nor is there any particular age difference that must be shown. Different courts have held, for instance, that a five year difference can be sufficient, but that a one year difference cannot." *Id.* at 729 (citations omitted). Applying these principles, the court concluded that a fourteen year difference in age "is clearly sufficient to satisfy the fourth prong of a *prima facie* case by raising an inference of age discrimination." *Id.* at 730; *see Maxfield v. Sinclair International*, 766 F.2d 788, 793 (3d Cir. 1985) (holding that a "plaintiff may establish the fourth element of the . . . test for a *prima facie* case by showing that s/he was replaced by a person sufficiently younger to permit an inference of age discrimination" and concluding that the plaintiff's replacement by an

11

employee more than twenty years younger was sufficient to satisfy this test). Apart from showing age differential, the fourth element of a *prima facie* case does not require that the complainant and the hired employee be similarly situated.

Therefore, based upon this case law, we conclude that the trial court erred as a matter of law in requiring Hoy to demonstrate that he and Beachy were similarly situated – in the sense that both were internal candidates from within the Borough's police force – as a necessary predicate in order to make out a *prima facie* case.

Hoy also argues that, irrespective of whether he was required to establish that he and Beachy were similarly situated, he met his burden at the *prima facie* stage. The United States Supreme Court has cautioned that the *prima facie* requirement for making out a discrimination claim "is not onerous" and poses "a burden easily met." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *see Marzano*, 91 F.3d at 508 (describing the burden of presenting a *prima facie* case as "relatively simple" and "easily made out") (citations omitted). For purposes of this appeal, we assume, without expressly deciding, that Hoy met the initial burden of demonstrating a *prima facie* case. The record establishes that Hoy, at first blush, was objectively qualified for the position of Chief of Police and the Borough decided to a hire a substantially younger (approximately twenty-six years younger) female instead. To us, these facts appear to be enough to sustain the burden of proving a *prima facie* case. *See, e.g., Equal Employment Opportunity Commission v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193-94 (10th Cir. 2000); *Evans v. Technologies Applications*, 80 F.3d 954, 959-60 (4th Cir. 1996); *see also Sempier*, 45 F.3d at 729-30.

12

Regardless of the trial court's legal error in requiring a showing that the complainant and hired employee were similarly situated at the *prima facie* stage, the use of comparator evidence and the concept of similarly situated employees often converge at both the *prima facie* and pretextual stages. *See Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012). Consequently, the trial court's legal error does not automatically dictate reversal; rather, in order for a trial court's erroneous determination to be reversible, it must be harmful or prejudicial to the complaining party. *Garner v. Pennsylvania Human Relations Commission*, 16 A.3d 1189, 1200 (Pa. Cmwlth. 2011).

**Stages 2 and 3: Legitimate, Nondiscriminatory Reason and Evidence of Pretext**

In this case, the parties do not dispute that the Borough satisfied its rebuttal burden of proffering legitimate, nondiscriminatory reasons for not hiring Hoy. (Hoy's brief at 30; the Borough's brief at 32.) As a result, the burden shifted back to Hoy to demonstrate that the Borough's reasons were a pretext for a discriminatory motive. Here, the trial court held, in the alternative, that even if Hoy established a *prima facie* case, he did not adduce sufficient evidence of pretext. (Trial court op. at 6-7.) If the trial court is correct, then its legal error described above is a harmless technicality and will not serve as a ground for reversal. *See Henley v. Zoning Hearing Board of West Fallowfield Township,* 625 A.2d 132, 134 n.4 (Pa. Cmwlth. 1993) ("Even if this Court agrees that [the complaining party] met this initial burden, because we hold that the five other requirements were not met, such error is harmless."). The defining issue, therefore, becomes whether Hoy adduced sufficient evidence of pretext to withstand summary judgment.

13

In this regard, Hoy asserts that the Borough's reasons were pretextual in a collage of arguments, first pointing out that all of the twenty-six applicants, including himself, were male, and that the only female in the mix, Beachy, was hired. He then attempts to attack the Borough's reasons by comparing his experience and qualifications with that of Beachy's, contending that he worked for twenty-five years with the Pennsylvania State Police and supervised nine to ten officers, while Beachy's background "pales in comparison." (Hoy's brief at 33.)

In a similar vein, Hoy posits that he: "has as much, if not more, community involvement" than Beachy; never was interviewed and, therefore, did not have the chance to prove that he has a "positive attitude" like Beachy; is "fully capable of following a budget;" "is dependable" and submitted letters of recommendation from his superior officers; and adduced evidence "that the reputation of the police department with the community declined after Beachy's appointment." *Id.* at 33-41. Continuing onward, Hoy asserts that the Borough's justifications for hiring an internal applicant are inconsistent with the fact that the Borough advertised for the position of Chief of Police. For these reasons, Hoy claims that genuine issues of material fact exist as to whether the Borough's reasons for not hiring him were a pretext for age and/or gender discrimination.

Conversely, the Borough argues that Hoy's proposed evidence is woefully inadequate to prove pretext. The Borough submits that, unlike Beachy, Hoy had never worked for the Borough; did not receive recommendations from the Borough's citizens; did not have experience handling police business in a small town; never served as acting Chief of Police of the Borough; and did not receive an endorsement from the prior Chief of Police.

14

In addition, the Borough asserts that even if Hoy possessed equal or somewhat superior qualifications, this does not prove pretext because an examination of qualifications is only relevant as to whether the Borough made the "right" hiring decision and does not tend to establish a discriminatory motive. According to the Borough, it is not within the discretion of the courts to re-write an employer's hiring policy and courts are ill-equipped to assume the role of a hiring committee.

Under the law, there are two ways in which a complainant can demonstrate that the employer's legitimate, nondiscriminatory reasons were pretextual; that is, a mask for discrimination. *Willis*, 808 F.3d at 644.

The first way to show pretext is for the complainant to point to evidence that would allow a factfinder to disbelieve the employer's reason for the adverse employment action. *Id.* at 644 (citation omitted). In order to raise sufficient disbelief, the complainant must point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the proffered nondiscriminatory reason did not actually motivate the employer's action." *Kroptavich*, 795 A.2d at 1059 (citations omitted). With respect to the employer's business reasons for not hiring a complainant, the question is not whether the employer made the best, or even a sound, business decision; instead, it is whether the real reason for the employment decision is discrimination. *Keller v. ORIX Credit Alliance*, 130 F.3d 1101, 1109 (3d Cir. 1997).

The second way a complainant can establish pretext is to point to evidence that would allow a factfinder to believe that an invidious discriminatory reason was "more likely than not a motivating or determinative cause" of the

employer's action. *Willis*, 808 F.3d at 645. As the Court in *Willis* explained, pointing to evidence demonstrating any of the following satisfies this second way to prove pretext: (1) the employer previously discriminated against the complainant; (2) the employer discriminated against others within the complainant's protected class; or (3) the employer has treated similarly situated individuals or "comparators" more favorably. *Id.* at 645 (citations omitted). With respect to the third means by which to establish pretext, although "similarly situated" does not mean that the complainant and comparators must be "identically situated," a complainant must demonstrate that his alleged comparators are "alike in all relevant respects." *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008).

In conducting this pretext analysis, though, the United States Supreme Court has emphasized that "a reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original, citation and internal quotation marks omitted).

At the outset, we note that Hoy does not contend that the Borough previously discriminated against him or has a history of discriminating against others who were males or over the age of forty. Significantly, the fact that the Borough preferred to hire an internal candidate who had received the recommendation of the previous Chief of Police is a legitimate and compelling reason not to hire Hoy, who was an external candidate with no such recommendation. *See Perkins v. Doyon Universal Services*, 151 P.3d 413, 417 (Alaska 2006) ("Preferring internal candidates is a legitimate and non-discriminatory reason for [the employer's] action with respect to this position."); *Summers v. Harvard University*, 397 F.Supp. 2d 166, 173 (D. Mass. 2005). These same facts also establish that Beachy, Hoy, and the remaining

16

male applicants are not similarly situated persons (or sufficient comparators) for purposes of proving pretext. *See also Royster v. Laurel Highlands School District*, 994 F.Supp. 2d 701, 714 (W.D. Pa. 2014) (concluding that the internal and external candidates were not similarly situated individuals for purposes of establishing pretext).

Contrary to Hoy's argument, the Borough's preference toward an internal applicant is in no way undermined by the fact that it advertised the position to outside candidates. There is nothing in the record to infer that the Borough's decision to advertise the position was for any reason other than that the Borough sought to find candidates that were potentially more suitable than Beachy but its pursuit proved to be unsuccessful. Therefore, Hoy has not produced sufficient evidence under the second *Willis* standard for proving pretext, and, unless he can establish demonstrable weaknesses, implausibilities, inconsistencies, or contradictions in the Borough's proffered legitimate reasons (the first *Willis* standard for proving pretext), the trial court properly entered summary judgment in favor of the Borough.

As evidenced from Hoy's arguments reproduced above, the gravamen of his point can be summed up from an excerpt from his brief: "Hoy's experience as a [twenty-five-year] state police veteran trumps [Beachy's] small town police work experience." (Hoy's brief at 34.) Although Hoy asserts that he is "more qualified and had more experience in police work" than Beachy, he admits that "both were objectively qualified to perform the Chief of Police position." (*Id.* at 27.)

"To discredit the employer's proffered reason, however, the [complainant] cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus

17

motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). This proposition stems from the concept that courts "will not second guess business decisions made by employers, in the absence of some evidence of impermissible motives." *Lucas v. Dover Corp.*, 857 F.2d 1397, 1403-04 (10th Cir. 1988). In determining whether to hire a candidate, an employer can rely not only on objective facts, but also on subjective reasons and/or characteristics that it believes renders a particular candidate most suitable for the position. *Chapman v. AI Transport*, 229 F.3d 1012, 1033-34 (11th Cir. 2000) (en banc). As the United States Supreme Court has stated: "[T]he employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria. The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to . . . liability." *Burdine*, 450 U.S. at 259. To be sure, a complainant "may not establish that an employer's proffered reason is pre-textual merely by questioning the wisdom of the employer's reasons, at least not where . . . the reason is one that might motivate a reasonable employer." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997).

Although evidence showing that an employer hired a less qualified applicant over the complainant may be probative of whether the employer's proffered reason for not promoting the plaintiff was pretextual, a complainant cannot establish pretext simply by showing that she is more qualified than the person hired. *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001).

In *Deines v. Texas Department of Protective & Regulatory Services*, 164 F.3d 277 (5th Cir. 1999), the United States Court of Appeals for the Fifth Circuit stated that:

> [D]isparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question. This evidentiary standard does not alter the plaintiff's evidentiary burden to prove the fact of intentional discrimination by a preponderance of the evidence. Instead, the standard only describes the character of this particular type of evidence that will be probative of that ultimate fact.

*Id.* at 280-81. The court concluded that: "It is hardly a basis for the jury to find mendacity on the part of the employer when its judgments on qualifications are somewhere within the realm of reason. There is then, for the purposes of proving pretext, a difference in simply 'second-guessing' an employer's judgment and finding proof of mendacity." *Id.* at 282.

In *Simms v. Oklahoma ex rel. Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321 (10th Cir. 1999), the United States Court of Appeals for the Tenth Circuit articulated a similar evidentiary burden for proving pretext. The court explained that:

> an employee's own opinions about his . . . qualifications [do not] give rise to a material factual dispute . . . . When two candidates are equally qualified in that they both possess the objective qualifications for the position and neither is clearly better qualified, it is within the employer's discretion to choose among them so long as the decision is not based on unlawful criteria.

*Id.* at 1329-30 (internal quotations and citations omitted). The court emphasized that its "role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second-guesses employers' business judgments." *Id.* at 1330.

Here, in his brief, Hoy concedes that both he and Beachy were objectively qualified for the position. (Hoy's brief at 27.) This Court has held that

19

"[a] party's statements in its brief . . . are treated as a judicial admission." *Bartholomew v. State Ethics Commission*, 795 A.2d 1073, 1078 (Pa. Cmwlth. 2002) (citation omitted). Judicial admissions are formal concessions "which have the effect of withdrawing a fact from issue and dispensing it without the need for proof of the fact." *Id.* At the end of the day, Hoy's factual concession is fatal to his arguments on appeal and, under the law enunciated above, conclusively establish that he cannot prove pretext.

Moreover, the evidence of record supports the reasons given by the Township for choosing Beachy as uniquely qualified for the position and at least as qualified as Hoy in this regard. The Township considered that Beachy had worked for the Borough's police department as a Sergeant, temporarily served as its Chief of Police, had recommendations from a number of residents, acquired budget experience and experience with enforcement of local ordinances in the Township, was mentored by the Chief of Police and had his recommendation. The record does not reflect a disparity in qualifications great enough to qualify as pretext, and, as such, a reasonable jury could not legitimately infer that the Borough consciously selected a less-qualified and unworthy candidate "unless some other strong consideration, such as discrimination, enter[ed] into the picture." *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1294 & 1299-1300 (D.C. Cir. 1998) (en banc). Even if this Court in recognizing Hoy's twenty-five years of service as a Pennsylvania State Trooper, disagreed with the Borough's determination that Beachy was the superior candidate for the position of Chief of Police, the parties do not dispute that the Borough met its rebuttal burden of proffering nondiscriminatory reasons for not hiring Hoy and we simply cannot conclude, based upon the current record, that the Borough's proffered justifications for preferring Beachy over Hoy were so unworthy of credence as to

support a finding of discriminatory intent.[5,6] The trial court, accordingly, did not err in granting summary judgment in favor of the Borough.

**Conclusion**

For the above-stated reasons, we conclude that the trial court committed legal error in determining that Hoy, as a necessary predicate to establishing a *prima facie* case, was required to show that he and Beachy were similarly situated. However, this error was harmless and had no effect on the trial court's ultimate disposition of this case. As more fully explained in our memorandum opinion, Hoy's admission in his brief defeats his claims as a matter of law and his evidence is legally insufficient to establish that the Borough's legitimate, nondiscriminatory reasons for

---

[5] Hoy further contends that the Borough "touted the fact that Beachy was the first female Chief of Police for the Borough according to an article that appeared in the Meadville newspaper." (Hoy's brief at 28.) To the contrary, there is nothing in the article to suggest that the Borough made any gender-biased comments in the article; indeed, Waite testified that he was not aware that Beachy was the first female Chief of Police in the county until he read the article. (R.R. at 309a.) Moreover, the only portion of the article cited by Hoy and contained in the reproduced record is the cover page of the newspaper, which contains the caption "Historic hire," a picture of Beachy, and the following statement: "Beachy is new chief of the [Borough's] Police Department and the first woman chief of police in Crawford County." (R.R. at 393a.) Even if this statement is true and could somehow be attributed to the Borough, it does not support an inference of discriminatory intent. If it could, then any company would be subjected to discrimination liability on the sole basis that it hired its first black, female, Irish, etc. individual at a certain position.

[6] Hoy also references the fact that the Borough's rejection letters were dated June 27, 2012, and although acknowledging that the uncontroverted evidence establishes that this was a typographical error, he seems to suggest that the Borough Council hired Beachy at the June 19, 2012 executive session rather than at the July 2, 2012 Council meeting that was open to the public. Assuming such an inference can be drawn from the evidence, we fail to see how it has any probative force in proving pretext where the candidates were narrowed down to Beachy and Hoy at the June 19, 2012 executive session. (R.R. at 294a-95a.) Regardless of when Beachy was officially hired over Hoy, the decision was made and the issue in this case is whether the Borough engaged in impermissible discrimination when it chose to hire Beachy instead of Hoy.

hiring Beachy were a pretext for discrimination.  Therefore, the trial court properly determined that the Borough was entitled to summary judgment as a matter of law.  Accordingly, we affirm the trial court's March 9, 2015 order.


_____
PATRICIA A. McCULLOUGH, Judge

22

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William R. Hoy,                              :
                    Appellant               :
                                            :    No. 1005 C.D. 2015
            v.                              :
                                            :
Borough of Cochranton                       :

## ***ORDER***

AND NOW, this 21st day of December, 2016, the March 9, 2015 order of the Court of Common Pleas of Crawford County is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge